No. 38,010

Earl K. Brooks and Vera L. Brooks, *Appellees*, v. Carl C. Olson, *Defendant*, Margaret L. Ralston, Glenn C. Ryan, Ernest C. Ryan, Floyd Ryan, Richard Morgan Ryan and Jewel E. Ryan, Interpleaders, *Appellants*.

(223 P. 2d 721)

Opinion filed November 10, 1950.

*Elmer W. Columbia*, of Parsons, argued the cause, and *John B. Markham* and *Herman W. Smith, Jr.*, also of Parsons, were with him on the briefs for the appellants.

*Willis K. Dillenberger*, of Oswego, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

Wertz, J.: This is an appeal by interpleaders from a ruling of the lower court sustaining a demurrer to the evidence on their interplea to set aside a sheriff's sale to an undivided one-fourth interest in certain real estate which they claim as owners.

The facts are as follows: On March 11, 1937, appellees Earl K. Brooks and Vera L. Brooks obtained a personal judgment against defendant Carl C. Olson which was kept current by successive executions. On the last execution, levy was made by the sheriff on an undivided one-fourth interest in the land in question, known as the Ryan farm, on the theory that said interest was owned by Carl C. Olson as one of the heirs of Nellie Olson Ryan, deceased. The undivided one-fourth interest in the Ryan farm was sold thereunder to the judgment creditors and appellees herein. After the sale, appellants filed a petition of intervention and amendments thereto contending they were owners of the land in question by right of inheritance from their father Charles K. Ryan, as disclosed by his will and consent thereto by his widow Nellie Olson

Ryan, and by reason of a judgment of the probate court in the Charles K. Ryan estate construing his will wherein his widow, Nellie Ryan, took but a life estate and the remainder vested in these intervenors; that as a result Carl C. Olson had no interest in said property on which a levy could be made. Intervenors asked that the levy in the sheriff's sale on the property in question be vacated and set aside and that appellants be declared to be owners of the property, and for other equitable relief. Appellees filed an answer to the intervening petition wherein they admitted that appellants were the children and sole heirs at law of Charles K. Ryan, deceased; that the will of Charles K. Ryan was admitted to probate; that on December 7, 1925, he became the owner and was at the date of his death the owner of an undivided one-half interest in the property in question, and that after his will was admitted to probate, the probate court made an order construing said will on March 13, 1945, adjudging and declaring Nellie Ryan, widow of decedent and stepmother of decedent's six children, interpleaders herein, to have a life estate in the real estate of decedent and the six children to have the remainder interest.

Issues were joined and the case proceeded to trial without a jury. The parties stipulated that proceedings had in the probate court of Labette county in the estates of Charles K. and Nellie Ryan, deceased, be admitted in evidence. The evidence discloses that Swan Olson died intestate in 1904, owner of a 160-acre farm in Labette county known as the Olson farm, leaving as his sole heirs at law his widow, Nellie Olson, and two sons, Silas O. Olson and Carl C. Olson, the latter being the judgment debtor and defendant in this action.

In 1911, Charles K. Ryan, a widower and father of six children, (five of whom are named as interpleaders, the sixth interpleader being the widow and sole heir of the sixth child) married Nellie Olson, mother of the two Olson boys referred to above. The family moved to the Olson farm where Charles K. Ryan made valuable improvements and paid the existing mortgage. In December, 1925, Jack Ryan, brother of Charles K. Ryan, by warranty deed conveyed to Charles K. and Nellie Ryan the Ryan farm, the real estate involved in this litigation. By this deed, Charles K. and Nellie Ryan became joint owners of the 240-acre Ryan farm. In the spring of 1926, Charles K. Ryan and Nellie Ryan moved to the Ryan farm, the Olson boys remaining on the Olson farm; an oral agreement was en-

tered into the same spring whereby the Olson farm was to become the sole property of the Olson boys, and Charles K. and Nellie Ryan would occupy the Ryan farm during their lifetimes and at the death of the survivor of them, the Ryan children were to inherit it; there was a family agreement to the effect that the Olson farm was to be kept in the Olson family and the Ryan farm was to be kept in the Ryan family. In January, 1931, Charles K. and Nellie Ryan conveyed the Olson farm to Silas O. Olson and Carl C. Olson, and in June, 1947, shortly after the death of Nellie Olson Ryan, the Olson boys executed and delivered to these six interpleaders their deed to the Ryan farm.

On the first of August, 1939, Charles K. Ryan made and executed his will. Parts thereof pertinent to this appeal are as follows:

"Item 2. It is my will that my beloved wife Nellie Ryan have and hold control of the home and farm and receive the net income from the entire estate, during her life.

"Item 3. It is my will that after my wife and myself are both dead the homestead, consisting of 240 acres of land described as follows: The East ½ of the SE ¼ of Section 31, Township 33, Range 18 and the SW ¼ of Section 32, Township 33, Range 18 in Labette County, Kansas, become a home for cripples, wornouts and destitute children of my descent, so far as the income from the homestead will allow. Before any allowances are made, the Trustee, shall see that all taxes are paid and buildings and insurance on same are maintained. Any income if any more than the items mentioned, shall be divided equally between my children. The Homestead shall be maintained, as provided above, until the death of the last survivor of my children, each shall have the right to dispose of his or her interest, only to become effective, only on the death of the last survivor of my children. The furniture and pictures, musical instruments, books and jewelry, if any, shall remain in the home. The names of my children are as follows: Ernest C. Ryan, Floyd Ryan, Alexander C. Ryan, Margaret L. Ralston, Glenn C. Ryan and Richard Morgan Ryan."

The following "consent" by Nellie Ryan was attached to the will:

### "CONSENT OF WIFE TO WILL.

"The undersigned, Nellie Ryan, wife of Charles K. Ryan, the Testator, of this will, having read the will and being well informed of the contents thereof, and the provisions made for me, therein and being well informed of my rights under the will and under the law in and to said property, hereby consent, that Charles K. Ryan, may bequeath away from me more than one half of my property.

"Dated this 1st day of August, 1939.

"Nellie Ryan"

Both the will and the consent of Nellie Ryan thereto were properly executed according to law and are not questioned here. On

January 1, 1944, Charles K. Ryan died testate and on February 9 following, Nellie Ryan, widow, filed the will for probate, and it was admitted to probate on March 6, 1944. One of the court's findings was that the consent by the wife was a valid election to take under the will. Margaret L. Ralston, one of the interpleaders, was appointed executrix.

On February 13, 1945, the executrix filed her petition in the probate court to construe the will of Charles K. Ryan. Pertinent parts of the findings and order of the court entered in that action on March 13, 1945, are as follows:

"Thereupon evidence was introduced in support of said petition and the court after hearing the evidence and carefully examining said last will and testament of the said Charles K. Ryan, deceased, and being now fully advised in the premises, finds specifically as follows:

"That Item 2 of said last will and testament gives to Nellie Ryan, widow of said deceased testator, a life estate in and to all of the property, both real and personal and the income therefrom owned by said decedent at the time of his death.

"That Item 3 of said last will and testament is so vague and indefinite that it is impossible to administer the same and is impossible and incapable of performance as set forth in said last will and testament. That the restraint of alienation of the real estate by the remainderman as therein named in said Item 3 is illegal and void and is a violation of the rule against perpetuities.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The court finds after careful consideration of said instrument and after viewing the same and interpreting the same as a whole that the true intent of said testator was as follows, to-wit:

"1. To give to his wife, Nellie Ryan, a life estate in all of his property, both real and personal and the income therefrom.

"2. To give to his children, to-wit: Ernest C. Ryan, Floyd Ryan, Alexander C. Ryan, Margaret L. Ralston, Glenn C. Ryan and Richard Morgan Ryan, share and share alike, the remainder interest in all of his real estate upon the death of the life tenant, Nellie Ryan.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"THEREFORE IT IS BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED, that the last will and testament of the said Charles K Ryan, deceased, be and it is hereby construed to give to the said Nellie Ryan, widow of said decedent, a life estate in and to all of the property, both real and personal and the income therefrom, owned by said decedent at the time of his death; to the children of said decedent, to-wit: Ernest C. Ryan; Floyd Ryan; Alexander C. Ryan; Margaret L. Ralston; Glenn C. Ryan; Richard Morgan Ryan and each of them share and share alike, the remainder interest in and to all of the real estate owned and possessed by said decedent at the time of his death."

Petition for final settlement was filed on May 15, 1945, and on June 12, 1945, the court made its final order and decree. Pertinent parts thereof read as follows:

"THEREFORE IT IS BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DE-CREED, that . . . the real and personal property belonging to said estate be distributed to the persons entitled thereto as provided in the order of this court, dated March 13, 1945, as hereinafter set forth, to-wit: Nellie Ryan, a life estate in and to the real and personal property and the income therefrom belonging to said estate as set forth in said petition for final account. The remainder of said real estate upon death of the said life tenant, Nellie Ryan, shall pass in equal shares in fee simple absolute to the said Ernest C. Ryan, son; Floyd Ryan, son; Alexander Ryan, son; Margaret L. Ralston, daughter; Glenn C. Ryan, son; and Richard Morgan Ryan, son."

The order of the court further provided that the estate be duly closed and the executrix discharged. Procedure in probate of the estate of Charles K. Ryan is not questioned here.

On March 12, 1947, Nellie Ryan, widow, died intestate. On March 25, following, petition for appointment of an administratrix of the estate was filed in probate court alleging among other things that Silas O. and Carl C. Olson were her sole and only heirs at law, and asking that an administratrix be appointed to take charge of certain personal property belonging to said estate. Margaret L. Ralston was appointed administratrix on April 22, 1947, the order of appointment reciting that upon the date of decedent's death, she was the owner of certain personal property and a life estate in certain personal property inherited through the estate of Charles K. Ryan, her deceased husband. No mention is made of any real estate in either the petition for appointment of an administratrix or in the court's order subsequent thereto. On June 15, 1948, a petition was filed for final settlement wherein it is alleged among other things that in addition to said personal property, petitioner has under her control and management real estate belonging to said estate, and describes an undivided one-half interest in the property involved in this action. On July 13, 1948, the court made its order for final settlement and discharge of the administratrix without describing any real estate. A part of the court's order reads as follows:

"4. The court further finds that said decedent, Nellie Ryan, died single and intestate on the 12th day of March, A. D. 1947, a resident of Labette County, Kansas, leaving surviving her as her sole and only heirs at law the persons whose name and relationship to decedent are as follows, to-wit: Silas O. Olson, her son and Carl Olson, her son. The court finds that said sole and only heirs at law of said decedent are entitled to receive, each an undivided one-half interest in the real estate and personal property belonging to and owned by said decedent at the time of her death."

No real property is described or listed, and it may be said that a reading of the petition for appointment of an administratrix and

the order appointing her eliminates any real property and confines the order to personal property of her own and the life estate in property inherited from Charles K. Ryan.

At the close of appellants' case, appellees interposed a demurrer to the amended interplea and evidence adduced in support thereof which was by the court sustained and the appellants' interplea dismissed.

Appellants assign as error: (1) The ruling of the lower court sustaining the demurrer to their evidence and dismissing their amended interplea; and (2) the rendering of judgment in favor of appellees and against appellants.

Appellants first contend that analysis of the will of Charles K. Ryan and the consent thereto by the widow Nellie Ryan establishes that Carl C. Olson had no interest in the Ryan farm which would be subject to execution and sale since the interest of his mother, Nellie Ryan, was but a life estate. As heretofore related, on August 1, 1939, Nellie Ryan consented in writing to the will of Charles K. Ryan. At the time of the death of Charles K. Ryan on January 1, 1944, the record title to the Ryan farm rested in Charles K. Ryan and Nellie Ryan jointly by virtue of a deed dated December 7, 1925, from Charles' brother Jack Ryan. Under Item 2 of the will, Nellie Ryan's interest in the real estate was limited to a life estate and under Item 3 of the will as construed by the probate court on March 13, 1945, appellants held the remainder interest in said property subject to the life estate of Nellie Ryan.

Not only did Nellie Ryan give her written consent to the will of her husband wherein he devised an undivided one-half interest in real estate owned by her, but subsequent to his death, she filed a petition to admit the will to probate alleging that the will was duly executed by the testator in all respects as provided by law and further alleging that on August 1, 1939, she as wife of decedent, of her own free will and accord while under no restraint or undue influence, executed her consent to said will, and made the will and consent thereto a part of the petition. Based thereon, the court ordered the will admitted to probate and found the consent thereto by Nellie Ryan to be valid and genuine. In the same proceedings, the court on petition to construe the will ordered that Nellie Ryan, widow, had but a life estate in the real estate, with the remainder in fee upon the death of Nellie Ryan, life tenant, to the children of decedent, Charles K. Ryan, the appellants herein. No appeal

was taken from the rulings and orders of the probate court, and the same became final orders prior to the death of Nellie Ryan. Consequently the written consent of Nellie Ryan to the will of Charles K. Ryan ratified and confirmed the testamentary disposition made by her husband, Charles K. Ryan, of her property, giving her but a life estate therein. Nellie Ryan, having consented to his will, consented to an alienation of whatever fee interest she may have had in this real estate and that her interest be limited to a life estate only.

Our decisions all hold that where a testator devises property, title to which is held by his wife, and she gives her written consent to such testamentary disposition of it, the wife thereby in effect renounces her right of ownership in the devised property and bars all persons whose right thereto must be claimed under and through her. (*Aten v. Tobias*, 114 Kan. 646, 220 Pac. 196; *Hanson v. Hanson*, 81 Kan. 305, 105 Pac. 444; *Chilson v. Rogers*, 91 Kan. 426, 137 Pac. 936.) In *Aten v. Tobias*, supra, we stated: (p. 654)

"The wife's written consent in conformity with the statute has the same effect as the widow's election after the testator's death. (Gen. Stat. 1915, § 11790; *Keeler v Lauer*, 73 Kan. 388, 395, 396, 85 Pac. 541; *Chilson v. Rogers*, supra, 426, 430; *Erickson v. Robertson*, 116 Minn. 90; 37 L. R. A. n. s., 1133 and note.) It has been held that where a husband makes a will disposing of all his property, without any provision therein for his wife, and the wife gives her consent thereto in writing, the will is valid and cannot be overthrown by the wife's descendant heirs at law. (*Hanson v. Hanson*, 81 Kan. 305, 105 Pac. 444.) Nor is there any hardship in this doctrine. The devolution of a man's property at his death is wholly a matter of statute; it is governed by legislation—the statute of wills or the statute of descents and distributions. Moreover, in this case, although the title to the home place was in the wife, it was a perfectly natural thing for the husband and wife to agree that the home place, and all the other lands of Cyrus, in all of which Susan had a wife's inchoate interest, should be held intact for the benefit of the grandchildren, after sufficient provision was made for Susan if she should survive her husband, and since Susan consented to the testamentary disposition of all these lands—her own and her inchoate half interest in all the lands of Cyrus—it will have to stand." .

In view of what has been said, it therefore follows that on the death of Nellie Ryan, her life estate and only interest in the property in question ended and her son Carl C. Olson, defendant and judgment debtor, inherited no interest in the land and consequently there was nothing upon which the appellees could levy and sell to satisfy the judgment against Carl C. Olson. In an examination of the proceedings in the estate of Nellie Ryan, deceased, we find

nothing that alters the conclusion hereinbefore related. In view of our conclusion, it is unnecessary to further consider other questions presented.

The judgment of the lower court is reversed and the cause remanded with instructions to enter judgment for the appellants.