No. 40,652

In the Matter of the Estate of Harry P. Rooney, Deceased. MAR-
GUERITE ROONEY, Executrix, and individually, *Appellant,* v. HARRY
B. TILLER, *Appellee.*

(317 P. 2d 416)

Opinion filed
November 9, 1957.

*Charles Rooney* and *Charles Rooney, Jr.,* both of Topeka, were on the
briefs for the appellant.

*J. Francis Hesse,* of Wichita, argued the cause, and *W. D. Jochems, J. Wirth
Sargent, Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, James W. Sar-
gent, Stanley E. Wisdom, Vincent L. Bogart, Cecil E. Merkel, John W. Brimer*
and *Harry L. Hobson,* all of Wichita, were with him on the briefs for the
appellee.

The opinion of the court was delivered by

PRICE, J.: This action involves the title to a quarter section of
land in Haskell County referred to as the "McCoy place," and which
was owned by testator and his wife as joint tenants. Inherent in

the case is the question of the validity of her written consent to his will which devised the property (with certain reservations) to a nephew of testator, and the further question whether the will, and her consent thereto, divested her of survivorship rights as a joint tenant.

Harry P. Rooney (hereinafter referred to as Harry) and his wife Marguerite were married in 1917. During their married life they accumulated several thousand acres of land. The "McCoy place" was acquired by them on January 15, 1951. Title was taken in "H. P. Rooney and Marguerite Rooney, and the survivor of them, as joint tenants and not as tenants in common." The deed was recorded two weeks later.

In December, 1953, Harry became ill and went from his home in Satanta to a hospital in Wichita. On January 22, 1954, he called his attorney cousin, Charles Rooney, of Topeka, and requested that he come to the hospital to prepare a will. The attorney arrived the next morning and in Harry's room in the hospital there was a detailed discussion as to how he desired to dispose of his property. Marguerite and a nurse were in and out of the room. From the data and information supplied by Harry, the attorney prepared the will in typewritten form, precisely as directed by Harry. That evening the attorney and Marguerite returned to the hospital at which time the three of them discussed in detail the provisions of the will, and Marguerite was apprised of her rights under the will and as a widow by statute. Harry signed the will and Marguerite signed her written consent thereto. Each of their signatures was witnessed by the nurse and the attorney. Although somewhat lengthy, we nevertheless think it advisable to set out the will in its entirety, and it follows:

"LAST WILL AND TESTAMENT OF HARRY P. ROONEY

"I, Harry P. Rooney, of Satanta, Haskell County, Kansas, being of full age and sound mind, hereby revoke all former Wills and testamentary dispositions made by me and make, declare, and publish, this to be my Last Will and Testament in manner and form following, that is to say:

"ITEM I

"I desire and direct that all my just debts and my funeral expenses be paid as soon as possible or practical after my death.

"ITEM II

"I give, devise, and bequeath to my sister, Nell Tiller, an undivided One-fourth (¼) interest in and to the Northeast Quarter (NE ¼) of Section Thirty-three (33) Township Two (2), Range Fifteen (15), Brown County, Kansas, known as the Evans Quarter.

"ITEM III

"I give, devise,. and bequeath to my nephew, Harry Bernard Tiller, One Hundred Sixty Acres (160) in Section Nineteen (19), Haskell County, Kansas, said Quarter known as the McCoy Place, reserving to my wife, Marguerite Rooney, a one-half (½) interest in the mineral rights therein and the existing royalties thereon, and upon her death said one-half interest shall go to my son, Archie Rooney.

"ITEM IV

. "I give, devise, and bequeath to Leslie Rooney all of my interest in and to the Hundred and Sixty Acres of land which my wife, Marguerite Rooney and I own in Powhattan Township, Brown County, Kansas.

"ITEM V

"I give, devise, and bequeath to my son, Archie Rooney, the North One Half (N ½) of Section Fourteen (14) in Seward County, Kansas, consisting of Three Hundred Twenty Acres (320) and a tract of land consisting of Twenty-two (22) acres with the improvements thereon adjacent to the Southwest City Limits of Satanta, Haskell County, Kansas, subject to the following restrictions: That my son Archie Rooney cannot sell or alienate either of said tracts of land except to his mother, Marguerite Rooney, until he has reached his 28th birthday.

"ITEM VI

"I give, devise, and bequeath the East One-half (E ½) of the Northeast Quarter (NE ¼) of Section Twenty-three (23) Township Twenty-nine (29), Range Twenty-five (25), Ford County, Kansas to my nephew, Doctor Jack Dean Tiller, of Wichita, Kansas.

"ITEM VII

"I give, devise, and bequeath to my nephew, Stanley Tiller, of Wichita, Kansas, the West One-Half (W ½) of the Northeast Quarter (NE ¼) of Section Twenty-three (23), Township Twenty-nine (29), Range Twenty-five (25), Ford County, Kansas.

"ITEM VIII

"I give, devise, and bequeath a life estate in and to the Northwest Quarter (NW ¼) of Section Twenty-three (23), Township Twenty-nine (29), Range Twenty-five (25), Ford County, Kansas, to my brother, Chester C. Rooney, with the remainder to my nephew, Jackie Rooney, and Donna Lee Rooney Oakes, share and share alike.

"ITEM IX

"I give, devise, and bequeath to my niece, Beulah Bell Daniels of Dallas, Texas, the West One-half (W ½) of the Northeast Quarter (NE ¼) of Section Twenty-two (22), Township Twenty-nine (29), Range Twenty-five (25), Ford County, Kansas.

"ITEM X

"I give, devise and bequeath the East One-half (E ½) of the Northeast Quarter (NE ¼) of Section Twenty-two (22), Township Twenty-nine (29), Range Twenty-five (25), Ford County, Kansas, to my niece, Rosana Rooney Schneider, Duart, California.

## "ITEM XI

"I further direct my wife, Marguerite Rooney, upon my death to pay to Alberta Rooney of Satanta, Kansas, the sum of $500.00 per year for ten consecutive years for the care and schooling of Cynthia Ann Rooney, Alberta and Donald Ray Rooney's daughter.

## "ITEM XII

"I direct that upon my death that my wife pay to my brother, Orlie E. Rooney, of Kansas City, Missouri, the sum of $200.00 each month as long as he lives.

## "ITEM VIII

"I give, devise, and bequeath all of the balance of my property, both real, personal, and mixed, of which I die seized, to my beloved wife, Marguerite Rooney.

## "ITEM XIV

"Included in the real property passing to my wife Marguerite Rooney is a certain tract of land in Section Seven (7), Township Thirty-one (31), Range Thirty-four (34), Seward County, Kansas, and which is not my homestead, and to insure the payment to my brother Orlie E. Rooney, as directed in Item XII, I desire that the land last above described be impressed with a lien to insure the monthly payments as directed in Item XII.

## "ITEM XV

"I further direct that the Federal and State Inheritance taxes which will be assessed against my estate be paid by the beneficiaries under the terms of my Will, each their proportionate share, and that my Executor hereinafter named is authorized to enforce the payment by each beneficiary for his or her share even though it were necessary for the Executor to sell the defaulting beneficiary's devise or bequest for the purpose of payment of said tax.

## "ITEM XVI

"I hereby nominate and appoint my wife, Marguerite Rooney, to act as sole Executrix of this my Last Will and Testament without bond.

"IN TESTIMONY WHEREOF, I have hereunto subscribed my name at the City of Wichita, Sedgwick County, Kansas, this 23rd day of January, 1954.

Harry P. Rooney
_____
Testator.

"We, the undersigned, do hereby certify that the foregoing instrument was at the time and place therein stated signed, declared and published by Harry P. Rooney as and for his Last Will and Testament, in the presence of us and each of us, who at his request, in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses the day and year last above recorded.

| Thelma V. Dirks, R. N. | 3742 Central, Wichita. |
|---|---|
| Name | Address |
| Charles Rooney | Topeka, Kansas |
| Name | Address |

"I, Marguerite Rooney, wife of Harry P. Rooney, who signed, declared and published the foregoing instrument as his Last Will and Testament, do hereby declare that I have read the same, understand the provisions thereto contained and the right accorded to me by Statute and I hereby consent to the said Will and accept the provisions therein made for me in lieu of the right accorded to me by Statute.

"IN TESTIMONY WHEREOF, I have hereunto subscribed my name, at the City of Wichita, Sedgwick County, Kansas, this 23rd day of January, 1954.

Marguerite Rooney

"We, the undersigned, do hereby certify that the foregoing instrument was at the time and place herein stated freely and voluntarily signed and declared by Marguerite Rooney, wife of Harry P. Rooney, as and for her wirtten consent to the foregoing last Will and Testament of Harry P. Rooney, in the presence of us and each of us who, at her request and in her presence and in the presence of each other, have hereunto subscribed our names as witnesses thereto the day and year last above written.

| Thelma V. Dirks, R. N. | 3742 Central, Wichita |
|---|---|
| Charles Rooney | Topeka, Kansas |

Harry died on March 15, 1954, and on May 17, 1954, Marguerite, named in the will as executrix, filed a petition in the probate court for its admission to probate. On June 11, 1954, the will and the written consent thereto were proved and admitted to probate, and Marguerite qualified as executrix. On the same date, June 11, 1954, she filed in the probate court the following document:

"CONSENT RESTRICTION.

"Comes now Marguerite Rooney, widow, of Harry P. Rooney, Deceased, and states that she had explained to her prior to her giving her consent to her husband's Will her rights under statute. That she had it explained and she understood that as his widow by statute, she was entitled to ½ of his property, that if she approved his Will she would waive that right.

"She didn't understand nor did she agree to authorize or consent to her late husband devising by Will any property which she owned in whole or in part. That she did not know until afterwards that he was attempting to devise real estate the title to which was vested in her. That her consent to the Will is restricted as above set out."

Thereafter, on a date not shown, Harry Bernard Tiller, the devisee of the "McCoy place" in Item III of the will (and concerning which this lawsuit is really about) filed in the probate court a petition for "Disclosure and Establishment of Devise" in which he alleged the probate of the will containing the devise to him (with certain reservations) of the "McCoy place"; that Marguerite, as executrix, had

failed, neglected and refused to include the property in the inventory filed by her, thus attempting to conceal and exclude the same from the jurisdiction of the court, and further alleged that Marguerite was converting the property and the income therefrom to her own use. The prayer was for an order requiring Marguerite to include the property in the inventory and to account for income received from it, and for a further order adjudging the petitioner to be the rightful devisee of the fee simple title to the property, subject only to the reservations mentioned in Item III of the will.

Marguerite filed her written defenses to this petition setting forth that the property in question had been conveyed to testator and her as joint tenants with right of survivorship; that at the time of the execution of the will neither she nor her husband knew that the title to the property was in their names as joint tenants; that she did not learn the true facts of the matter until shortly before the will was admitted to probate, and that such fact caused her to file her "Consent Restriction," and the prayer was for an order denying the petition and for a further order to the effect that upon her husband's death title to the land in question vested in her absolutely by virtue of her rights of survivorship.

After hearing the matter, the probate court made an order denying Tiller's petition and held that he had no right, title or interest to the property in question under Harry's will.

From this order and finding Tiller appealed to the district court.

Following a full hearing in the district court at which considerable evidence was introduced, the court reversed the ruling of the probate court and held that Tiller was the devisee of the property in question under Item III of Harry's will, subject only to the reservations mentioned therein. In rendering the judgment the court made findings of fact and conclusions of law as follow:

"FINDINGS OF FACT.

"1. Harry P. Rooney and Marguerite Rooney were married in 1917. At that time Harry Rooney owned a section of land in Haskell County, Kansas, subject to a mortgage of $1,800. With that exception his estate at the time of his death represented the enterprise, diligence and work, jointly, by them.

"2. Harry Rooney had at the time of his death in March, 1954, some fourteen deeds to land in Haskell, Seward, Ford and Brown Counties, Kansas, consisting of several thousand acres. The title to the last tract purchased, the McCoy quarter, was in the name of Harry P. Rooney and Marguerite Rooney, as joint tenants, with the right of survivorship. All of the other titles stood in the name of Harry P. Rooney, even including the deed to their home in Satanta.

"3. Harry P. Rooney and Marguerite A. Rooney, his wife, acquired title on January 15, 1951, to the following described tract of land, to-wit:

"Northeast Quarter (NE ¼) of Section Nineteen (19), Township Thirty (30) South, Range Thirty-three (33) West of the Sixth P. M., in Haskell County, Kansas.

"Title was acquired by a deed naming the grantees as 'H. P. Rooney and Marguerite Rooney, and the survivor of them, as joint tenants and not as tenants in common', which deed was filed in the office of the Register of Deeds of Haskell County, Kansas, on January 29, 1951, recorded in Volume 37 of Deeds at page 60.

"4. Harry Rooney executed his Will in a hospital in Wichita in January of 1954.

"5. At the time of executing his Will he was unaware or had forgotten that the title to the McCoy quarter stood in his name and his wife's name, in joint tenancy, with the right of survivorship. Marguerite Rooney, likewise, did not know or remember the nature of the title, nor did the scrivener who prepared his Will know.

"6. The consideration paid for said property was the sum of $16,000.00, and said sum was paid out of funds belonging to the testator and his wife jointly. (The payment of the property out of their joint funds and the taking of the title in their joint names resulted from an understanding between them at the time.)

"7. After the acquisition of the property, the testator and his wife received the income therefrom as joint owners, as evidenced by Petitioner's Exhibit '3', Stipulation of Interest and Transfer Order, and Petitioner's Exhibits '4' and '5', monthly checks for royalty payments.

"8. The testator, Harry P. Rooney, executed his Last Will and Testament on the 23rd day of January, 1954, after there had been considerable discussion about its various provisions between himself, his wife, and the attorney who acted as scrivener of the Will. Item 3 of the Will purported to devise the 'McCoy Place' to the petitioner herein, subject to a reservation of an undivided one-half interest in the mineral rights to the testator's wife during her lifetime and to a son, Archie Rooney, thereafter, the said 'McCoy Place' being the same property above described.

"9. At the time of the execution of the Will, Marguerite A. Rooney, the wife, executed her consent thereto in the presence of the same attesting witnesses, which consent reads as follows:

" 'I, Marguerite Rooney, wife of Harry P. Rooney, who signed, declared and published the foregoing instrument as his Last Will and Testament, do hereby declare that I have read the same, understand the provisions thereto contained and the right accorded to me by Statute and I hereby consent to the said Will and accept the provisions therein made for me in lieu of the right accorded to me by Statute.

" 'IN TESTIMONY WHEREOF, I have hereunto subscribed my name, at the City of Wichita, Sedgwick County, Kansas, this 23rd day of January, 1954.'

"Prior to executing the consent the attorney who had acted as scrivener of both the Will and the consent, carefully explained to her the rights given her by law as a spouse of the testator, and he also explained to her that she did not need to sign the consent if she preferred to take under the law. Mar-

guerite A. Rooney objected specifically to the devise to Harry Bernard Tiller, and also to one other provision of the Will, but did sign the consent above quoted.

"10. Harry Rooney held title to a two-fifths interest in a quarter section of land in Brown County, Kansas, and by a separate conveyance Marguerite held title to the other three-fifths interest in said quarter. Marguerite was, and is, the owner of a section of land in Kimball County, Nebraska. Harry made no attempt to devise her land, other than the McCoy quarter.

. "11. A few days before the testator's death, which occurred on the 15th day of March, 1954, the testator had a conversation with the attorney who was the scrivener of the Will, in which he stated that he had discovered the title to the McCoy quarter was owned by himself and his wife as joint tenants, and discussed the matter of changing the will to give the petitioner some other piece of property instead of the McCoy Place. No decision was made as to what other piece of property was to be given to the petitioner, and the testator died a short time later without making any change in the Will.

"12. After the death of the testator, Marguerite A. Rooney, on the 17th day of May, 1954, executed and filed in the Probate Court of Haskell County, Kansas, her petition, as mother and next friend of her minor son, for the admission of the will to probate; and on the 11th day of June, 1954, the will was proven and admitted to probate, and the said consent of Marguerite A. Rooney was also proven and admitted to record. Marguerite A. Rooney was appointed to act as executrix, she qualified in the usual manner, and has continued to act as executrix to date. She has at all times cooperated in the probate of the will. No appeal has ever been taken by anyone from the order admitting the will to probate.

"13. On the 11th day of June, 1954, Marguerite A. Rooney executed and filed in the Probate Court of Haskell County, Kansas, an instrument entitled 'Consent Restriction,' which instrument was received in evidence. However, she has filed no petition either in the Probate Court of Haskell County, Kansas, or in any other court, seeking to set aside her consent to the will; and she claims the properties, both real and personal, devised and bequeathed to her in the will.

"14. The executrix, Marguerite A. Rooney, has not included the said real estate in the inventory in the probate proceedings, nor has she given any accounting of the income, if any, therefrom.

"CONCLUSIONS OF LAW.

"1. The Consent of Marguerite A. Rooney to the last will and testament of Harry P. Rooney, both dated the 23rd day of January, 1954, was a valid and unqualified general consent to the terms and conditions of the said last will and testament.

"2. The designated 'Consent Restriction' filed by Marguerite A. Rooney in the Probate Court on the 11th day of June, 1954, would have no effect unless the general consent to the will was nullified or modified for some reason.

"3. As provided by G. S. 1955 Supp. 59-603, Marguerite A. Rooney has no election, option or choice except to take from her deceased husband's estate in strict conformity with the terms and conditions of the said last will and testa-

ment, one of which terms and conditions was that the 'McCoy place' was devised to the petitioner.

"4. By consenting to her husband's last will and testament, acquiescing and cooperating in its probate, and claiming the devises and bequests made under it in her favor, Marguerite A. Rooney has in effect renounced her title to the 'McCoy' property and is estopped to deny the right of her husband to devise it as his own property. Since the deed to the 'McCoy place' was recorded she is charged with constructive knowledge of its contents. At the time the will of Harry P. Rooney was signed the McCoy place was discussed between Harry P. Rooney and Marguerite A. Rooney, as shown by the findings of fact, and she executed the general consent to the will.

"5. Marguerite A. Rooney, as Executrix, should be required to inventory the said 'McCoy place' as a part of the probate estate of the testator.

"6 The petitioner, Harry Bernard Tiller, is the devisee of the 'McCoy place' under the last will and testament of the testator, subject to the reservation of an undivided one-half in the minerals to Marguerite A. Rooney for life and to Archie Rooney thereafter.

"7. In accordance with the requirements of G. S. 59-1401 the said Executrix, Marguerite A. Rooney, should be required to account for all of the rents and earnings from the said 'McCoy place' since the death of the testator.

"8. The petitioner, Harry Bernard Tiller, is entitled to his costs herein."

Marguerite filed a motion for a new trial on the grounds the findings of fact were in part contrary to the evidence; the conclusions of law were contrary to the evidence and law, and on the further grounds of accident and surprise, and newly discovered evidence.

This motion was denied, with the exception that finding of fact No. 6 was amended to read as follows:

"The consideration paid for said property was the sum of $16,000.00. Said sum was paid out of funds available to both parties and the deed was taken in their names as joint tenants, with right of survivorship."

Judgment was entered in harmony with the findings and conclusions and Marguerite has appealed, her sole specification of error being:

"The Court erred in his findings of facts and conclusions of law and for failure to grant the appellant a new trial, and all other Orders and Judgments adverse to Marguerite Rooney."

In her brief she states the questions to be:

"1. Can one who is a joint tenant with the right of survivorship devise by will in his lifetime this property and upon his death defeat the survivorship feature, or does the property upon his death pass to the survivor by operation of law?

"2. Is a limited consent by a spouse to her husband's will contractual in nature, and is it tantamount to a joint will?

"3. Can Item III of the will of the decedent be deleted and the remainder of the will given full force and effect and probated to final judgment?"

It is to be noted that notwithstanding the specification of error, the record does not disclose any motion by Marguerite to set aside any of the findings of fact, and in her brief it is not contended that any of the findings are unsupported by evidence. For that reason we forego a detailed discussion of the evidence and merely state that from our examination of it, it may not be said the findings are unsupported.

We think, however, that in view of the record and the various contentions made, the basic question is whether the findings support the judgment. In other words, if Marguerite's written general consent to the will is to stand, does Item III of the will divest her of survivorship rights in the property in question?

The question of sufficiency of consent by one spouse to the will of the other has been treated in many decisions by this court dealing with diverse facts and circumstances. The general rule deduced from all of the decisions is that the consent must be given freely, understandingly and intelligently. (*In re Estate of Ellis,* 168 Kan. 11, 28, 210 P. 2d 417; *In re Estate of Patzner,* 173 Kan. 133, 244 P. 2d 1183.)

While it is true that Marguerite brought no formal action, as such, to set aside her consent to the will, we think that under all of the facts and circumstances presented, the filing of her so-called "Consent Restriction," and her written defenses to the petition filed by Tiller, were sufficient to raise the question and vest the court with jurisdiction to determine the matter.

As stated in finding No. 5, at the time the will was executed both Harry and Marguerite were unaware of, or had forgotten that the "McCoy place" was owned by them in joint tenancy with right of survivorship. From one standpoint, therefore, it might be argued that her consent was not "understandingly" given. On the other hand, the evidence shows, and the court so found, that her rights as a beneficiary under the will, and as a surviving spouse under the law, were fully explained to her, and that, notwithstanding her specific objections to the devise in question to Tiller, and also to another provision of the will, she, nevertheless, signed the unqualified general consent. It is not contended that she was in any way overreached, coerced or taken advantage of. The pattern of the entire will is such as to indicate a desire by testator that numerous

persons other than Marguerite were to share in his estate. All matters in connection with the execution of her consent were aired fully in the trial court. Some of the evidence was in dispute. Inherent in the court's findings is the conclusion that the evidence was insufficient to overthrow her unqualified general consent, and she is bound thereby.

This brings us, then, to the ultimate question whether by Item III of the will, and Marguerite's written consent thereto, she was divested of survivorship rights in the property in question.

In support of her position she cites a number of authorities from other jurisdictions and textbooks (14 Am. Jur., Cotenancy, § 6, p. 80) to the effect that a consequence of the doctrine of survivorship is that a joint tenant cannot devise his interest in the land, for the devise does not take effect until after the devisor's death, and the claim of the surviving tenant arises in the same instant with that of the devisee and is preferred thereto.

That, however, is not this case, because of the cotenant's (Marguerite's) unqualified written consent to the specific devise in question. While the facts before us are not those in *Berry v. Berry,* 168 Kan. 253, 212 P. 2d 283, the analogy is clear. In our opinion the general principle underlying the holding in *Brooks v. Olson,* 170 Kan. 138, 223 P. 2d 721 (and cases cited therein), is applicable to and decisive of the question before us. There it was held that where a testator devises property, title to which is held by his wife, and she gives her written consent to such testamentary disposition, she thereby in effect renounces her right of ownership in the devised property. As a practical matter, that is what was done here. Testator and his wife owned the property in question as joint tenants with rights of survivorship. He devised it, with certain reservations, to a third party. Her unqualified written consent to such devise is therefore binding upon her.

Other contentions made in this appeal have been neither overlooked nor ignored, but in our opinion are either inapplicable or without merit. We are convinced the trial court reached a correct decision in this case, and the judgment is therefore affirmed.