(8 P.3d 1274)

No. 83,225

No. 83,498

In the Matter of the Estate of EDWARD N. MATER, Deceased. PRODUCTION CREDIT ASSOCIATION OF SOUTH CENTRAL KANSAS, *Appellee/Cross-appellant*, v. EUGENE W. MATER, JEANNIE M. MATER, PEARL MATER BERENS, and her husband, RALPH BERENS, and PEARL MATER BERENS as TRUSTEE OF THE PEARL MATER BERENS REVOCABLE LIVING TRUST, *Appellants/Cross-appellees.*

Opinion filed July 7, 2000.

*Philip L. Turner* and *Dan E. Turner,* of Topeka, for appellants/cross-appellees.

*Morgan Wright,* of Larned, for appellee/cross-appellant.

GREEN, P.J., LEWIS, J., and ROBERT J. FLEMING, District Judge, assigned.

GREEN, J.: In this consolidated appeal, Eugene W. Mater, Pearl Mater Berens, and Pearl Mater Berens as Trustee of the Pearl Mater Berens Revocable Living Trust (the Maters) appeal from the trial court's and probate court's determination that certain real property titled in joint tenancy with right of survivorship was properly included in the probate estate. The Maters argue (1) that certain real property titled in joint tenancy was erroneously included in the probate estate and that said property passed to Pearl outside the probate estate; (2) that Production Credit Association of South Central Kansas (PCA) was precluded from foreclosing its mortgage on the property; and (3) that the trial court erred in not finding the entire mortgage obtained by PCA was void and unenforceable. We agree and reverse.

On cross-appeal, PCA argues that the probate court erred in denying its request for fees and expenses because the Maters violated K.S.A. 1998 Supp. 60-211(b)(1) by suppressing from the probate court their knowledge that PCA had an adverse interest in the Maters' nunc pro tunc order. We disagree and affirm.

Edward N. Mater died testate on October 26, 1975. At the time of his death, Edward owned several tracts of land, including the following described real estate in Barton County, Kansas:

"The East Half (E/2) of the Southwest Quarter (SW/4) of Section Eleven (11), in Township Seventeen (17) South, Range Fifteen (15), West of the Sixth P.M."

This tract of land is referred to as Tract 2. Edward and his wife, Pearl, acquired this property in 1951 as joint tenants with the right of survivorship.

As executrix of Edward's estate, Pearl did not inventory Tract 2 as property held in joint tenancy. Instead, she inventoried only an undivided one-half interest in Tract 2, as though that tract had been owned by them as equal tenants in common at Edward's death. Moreover, Pearl filed federal and state death tax returns reporting

her husband's interest in Tract 2 as consisting of only an undivided one-half interest.

In her petition for final settlement of the estate, Pearl stated that her husband owned at his death only an undivided one-half interest in Tract 2 and asked the probate court to declare that he devised that one-half interest as follows:

"an undivided one-half (½) interest in all of the real property to his wife, Pearl Mater; and devised and bequeathed the other undivided one-half interest in real property to his wife, Pearl Mater, for life, with the right to receive the crops, rent and income therefrom during her lifetime; and devised and bequeathed to his son, Eugene Mater, the rest and remainder thereof."

The probate court assigned the ownership of that undivided interest just as Pearl requested.

In 1988, Eugene began financing his farm operations with PCA. To support his loan application, Eugene signed and filed a balance sheet with PCA wherein he reported full ownership of Tract 2. In 1992, PCA required Eugene and his wife, Jeannie M. Mater, to mortgage their realty interests, including Eugene's interest in Tract 2, as additional collateral for the loan. PCA had a title opinion prepared in regard to that mortgage. The title opinion revealed the title defect that was created when an undivided one-half interest in Tract 2 was devised under the terms of Edward's will. Despite the title defect, the title company recommended that PCA describe its mortgage interest in Tract 2 as an undivided one-fourth interest subject to Pearl's life estate and an expectancy in the remaining three-fourths interest. In the mortgage, PCA described Eugene's interest in Tract 2 as recommended by the title company. In 1995, PCA renewed Eugene and Jeannie's loan. The 1995 mortgage described Eugene's realty interests exactly as the 1992 mortgage did.

On December 5, 1997, Pearl and her current husband, Ralph Berens, conveyed by warranty deed all of Tract 2 to the Pearl Mater Berens Revocable Living Trust. It is possible that while preparing to transfer property into the trust, Pearl discovered that an undivided one-half interest in Tract 2 should not have been inventoried in Edward's probate estate. It is unclear when she notified Eugene that he did not own specific portions of Tract 2 because of the way the title to Tract 2 was held before Edward's death. Nevertheless,

on December 23, 1997, Pearl and Eugene appeared by their counsel before the probate court and orally moved, ex parte, for a nunc pro tunc order to correct the journal entry of the decree of final settlement of Edward's estate. The probate court determined that Tract 2 should have passed under the 1951 joint tenancy warranty deed to Pearl and issued the nunc pro tunc order.

In February of 1998, Eugene filed for bankruptcy. Early the next year, the bankruptcy court ended Eugene's Chapter 7 bankruptcy, discharging him from all personal liability for his dischargeable debts, including the mortgage held by PCA.

On June 26, 1998, PCA filed petitions in both probate court and the trial court. First, the probate court petition sought invalidation of the ex parte nunc pro tunc order on the grounds that PCA was an interested party due to its mortgage interest in Tract 2, but that it did not receive notice of the proceeding. In the trial court, PCA sought to foreclose Eugene's mortgage because the loan was in default.

The probate court granted PCA's motion for summary judgment, determining that the nunc pro tunc order was invalid. The probate court rationalized that the nunc pro tunc order did not correct a clerical error in the recording of a judgment but attempted to alter a decree that was actually rendered. Although PCA requested attorney fees, the probate court refused to award them, finding that the Maters made a meritorious argument to the court.

Similarly, the trial court granted PCA's motion for summary judgment. The trial court held that equitable estoppel did not prevent PCA from foreclosing on Eugene's mortgage because PCA did not make representations to the Maters regarding the quality of the title to Tract 2.

*Probate Court's Invalidation of the Nunc Pro Tunc Order*

It is first necessary to address whether the probate court erred in invalidating the nunc pro tunc order. A nunc pro tunc order is designed to make court's records speak the truth and to record that which was actually done, but not recorded. See Black's Law Dictionary 1069 (6th ed. 1990). The function of a nunc pro tunc

order is not to make an order now for then, but to enter now for then an order previously made. *French v. French*, 171 Kan. 76, 82, 229 P.2d 1014 (1951). Moreover, "it is not the function of an order nunc pro tunc to alter the judgment actually rendered." *Bush v. Bush*, 158 Kan. 760, 763, 150 P.2d 168 (1944).

Here, the nunc pro tunc order did not correct a clerical error in the recording of a judgment. The probate court did not originally determine that Pearl owned Tract 2 in fee simple. Instead, the probate court erroneously determined that one-half of the interest in Tract 2 should pass through the probate estate. As a result, the nunc pro tunc order was invalid because it purported to alter a judgment actually rendered by the probate court.

*Ownership of Tract 2*

The Maters argue that the decree of final settlement of Edward's estate is void as to Tract 2 because that land was held in joint tenancy with rights of survivorship by Edward and Pearl prior to Edward's death. It is the Maters' position that real property held in joint tenancy with a right of survivorship which was mistakenly inventoried was never part of the estate. As a result, the Maters maintain that the decree of final settlement as it relates to Tract 2 is void and unenforceable. Because this argument poses a question of law, our review is unlimited. See *Olathe Mfg., Inc. v. Browning Mfg.*, 259 Kan. 735, Syl. ¶ 1, 915 P.2d 86 (1996).

"The distinctive characteristic of joint tenancy is survivorship, and a surviving joint tenant of real property does not take as a new acquisition under the laws of descent and distribution, but under the conveyance by which the joint tenancy was created . . . ." *In re Estate of Foster*, 182 Kan. 315, Syl. ¶ 1, 320 P.2d 855 (1958). "[I]f the joint tenancy were not terminated then the title to the real estate in question vested in the survivor and was not subject to the contractual provision of the will." *In re Estate of Ciochon*, 4 Kan. App. 2d 448, 454, 609 P.2d 177, *rev. denied* 228 Kan. 806 (1980) (citing *Berry v. Berry*, 168 Kan. 253, 256, 212 P.2d 283 [1949]).

Apparently, neither the Kansas appellate courts, nor other jurisdictions, have addressed the ownership status of property that was originally held in joint tenancy, but was inventoried in probate as tenancy in common and distributed under the terms of the decedent's will. As a result, the issue to be determined is whether the

surviving joint tenant owns the property in fee simple or whether the property is owned by those who took under the will.

Although not a bay horse on all fours, *In re Estate of Laue*, 225 Kan. 177, 589 P.2d 558 (1979), provides a helpful analogy. In that case, the decedent and his wife owned personal property in joint tenancy prior to the decedent's death. The trial court held that all of the inventoried personal property owned in joint tenancy passed to the wife as the surviving joint tenant and not to the decedent's children as beneficiaries of the trust created in his will. Our Supreme Court agreed, rationalizing that "any of the personal property owned by [the decedent and his wife] as joint tenants at the time of [the decedent's] death would become the sole property of [the surviving joint tenant] by virtue of the right of survivorship and such property would not be included as part of the assets of [the decedent's] estate." 225 Kan. at 185. The *Laue* court further noted that there was no evidence of an inter vivos conveyance, nor evidence of a contract between the parties which would have terminated the right of survivorship.

A similar issue was addressed in *In re Estate of Means*, 4 Kan. App. 2d 169, 603 P.2d 654 (1979). In *Means*, the decedent and his wife owned personal property in joint tenancy prior to the decedent's death. The wife did not inventory this personal property in the decedent's probate estate because she believed the property passed to her as the surviving joint tenant. The decedent's daughter disagreed, arguing that this property should have been included in the probate estate. The trial court determined that this property should have been inventoried in the probate estate because the joint tenancy ownership of the personal property was terminated by the execution of the will and the wife's consent thereto. On appeal, the trial court's decision was reversed. The *Means* court held: "[W]e cannot say that [the wife] is estopped to assert her rights of survivorship in the personal property held in joint tenancy, nor do the will and consent amount to a contract whereby the parties agreed to terminate their right of survivorship." 4 Kan. App. 2d at 177; see *In re Estate of Ciochon*, 4 Kan. App. 2d at 457 (holding that the surviving joint tenant took fee simple title to the real property held in joint tenancy because the execution of the

joint, mutual, and contractual will did not sever the joint tenancy titles).

Cases from other jurisdictions are also helpful. For example, in *Estate of Awtry v. Commissioner of Internal Revenue*, 221 F.2d 749 (8th Cir. 1955), the decedent and his wife owned property, including real estate, in joint tenancy before the decedent's death. After the decedent's death, the wife claimed a marital deduction as to the joint tenancy property, but the deduction was denied by the tax court. The tax court rationalized that the interest of the surviving spouse in the joint tenancy property was a terminable interest. The *Awtry* court disagreed:

"We are convinced after a careful consideration of the authorities . . . that [the surviving joint tenant] received complete and absolute fee simple title to the joint tenancy real estate . . . . No interest in any of such property ever reached the estate of [the decedent]. [The decedent's] death terminated all interest that he had in the joint tenancy property. A will only operates upon such property as a decedent may own at the time of his death. We conclude that so far as the involved joint tenancy properties are concerned there was nothing for [the decedent's] will to operate upon, and this is true even if it be conceded that the will by its terms was broad enough to include the joint tenancy property." 221 F.2d at 756.

The *Awtry* court concluded that the wife acquired fee simple title to the joint tenancy property through the joint tenancy contracts, and that the decedent's will in no way affected the title to the joint tenancy property. See also *Wood v. Logue*, 167 Iowa 436, 442, 149 N.W. 613 (1914) ("[The decedent] being the first of the [joint tenants] to die, did not die seized on any heritable interest in the land or of any right or interest therein which could be properly subjected to sale by the administrator of her estate."); *Wernet v. Jurgenson*, 241 Iowa 833, 837, 43 N.W.2d 194 (1950) ("The rule is settled that when [the decedent] died title to the property [held in joint tenancy] immediately vested absolutely in [the surviving joint tenant] under the . . . deed.").

Here, Edward and Pearl owned Tract 2 in joint tenancy with the right of survivorship before Edward's death. When Edward died, title to Tract 2 immediately vested under the deed to Pearl in fee simple. It follows that Edward did not die seized of any heritable interest in Tract 2 that could be distributed under the terms of his

will. Stated another way, upon Edward's death no title to Tract 2 passed to his heirs. Instead, fee simple title vested in Pearl under the deed. As a result, the probate court did not have the authority to distribute an undivided one-half interest in Tract 2 under the terms of Edward's will.

*Renunciation or Disclaimer*

The issue remains, however, whether Pearl gave up fee simple title to Tract 2. PCA argues that Pearl renounced fee simple title to Tract 2 because she specifically inventoried an undivided one-half interest in that land as an asset of Edward's estate and petitioned the probate court to make that finding. Although PCA uses the term "renounce" to frame its argument, the terms "renunciation" and "disclaimer" are used interchangeably in statutes and by courts. See Note, *Disclaimer Statutes: New Federal and State Tools for Postmortem Estate Planning* (hereinafter *Disclaimer Statutes*), 20 Wash. L. J. 42, n. 2 (1980).

To bolster its argument that Pearl renounced fee simple title to Tract 2, PCA relies on two cases: *Brooks v. Olson*, 170 Kan. 138, 223 P.2d 721 (1950), and *In re Estate of Rooney*, 181 Kan. 1029, 317 P.2d 416 (1957). In *Brooks*, the decedent specifically devised his surviving wife's land to his children by an earlier marriage, subject to the wife's life estate. The *Brooks* court held: "[W]here a testator devises property, title to which is held by his wife, and she gives her written consent to such testamentary disposition of it, the wife thereby in effect renounces her right of ownership in the devised property . . . . [Citations omitted.]" 170 Kan. at 144.

Similarly, in *Rooney*, the decedent specifically devised to his nephew land the testator and his surviving wife owned at his death as joint tenants, subject to the wife's life estate. The wife executed an unqualified general consent to the provisions of the will. The *Rooney* court held that the wife's right of survivorship as a joint tenant in the property was extinguished because her unqualified general consent to the will was binding upon her. 181 Kan. 1029, Syl. ¶ 1.

*Brooks* and *Rooney* are distinguishable from the instant case. In those cases, the renunciations occurred before the ownership in-

terests vested in the wives. Here, however, Pearl did not request the probate court to include an undivided one-half interest in Tract 2 until after fee simple title vested in her. As a result, it is necessary to determine whether Pearl, as the surviving joint tenant, could have renounced, or disclaimed, fee simple title after that interest vested in her.

Kansas was one of the first states to enact a statute allowing for disclaimer of property. *Disclaimer Statutes,* 20 Wash. L. J. at 55-56 (citing L. 1968, ch. 367 [codified at K.S.A. 59-2291]). At the time of Edward's death, K.S.A. 1975 Supp. 59-2291 provided, in pertinent part:

"Any heir, next of kin, devisee, legatee, person succeeding to a disclaimed interest, beneficiary under a testamentary instrument or any person designated to take pursuant to a power of appointment exercised by or under a testamentary instrument may disclaim in whole or in part the succession to any property, real or personal, or interest therein by filing a written instrument within the time and in the probate court as hereinafter provided."

It was not until 1980 that the statute was amended to provide for disclaimer of joint tenancy property. *Disclaimer Statutes,* 20 Wash. L. J. at 60 (citing L. 1980, ch. 168, § 1[a] [codified at K.S.A. 59-2291(a)]). The canon *expressio unius est exclusio alterius* states that the expression of some specific terms excludes any items not expressly included in the specific list. See *In re Marriage of Killman,* 264 Kan. 33, 42, 955 P.2d 1228 (1998). Since the statute in effect at the time of Edward's death did not expressly provide for disclaimer of joint property, it is necessary to examine the common law in resolving this issue. See *U.S. v. Singleton,* 165 F.3d 1297, 1302 (10th Cir.), *cert. denied* 527 U.S. 1024, 144 L.Ed.2d 775, 119 S.Ct. 2371 (1999) ("Congress is understood to legislate against a background of common-law adjudicatory principles. Thus, where a common-law principle is well established . . . the courts may take it as a given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident.").

*In re Estate of Estes,* 239 Kan. 192, 195, 718 P.2d 298 (1986), noted the following regarding disclaimer at common law:

"At common law, a legatee or devisee could always renounce his testamentary disposition, while a distributee could not. The theory was that one taking under a will had the right to accept or reject the testator's offer, while a distributive share in intestacy vests by force of law in the distributee at the date of death. [Citation omitted.]"

No Kansas appellate case could be located which addressed whether property transferred outside the probate estate may be disclaimed under the common law. See generally *In re Estate of Burmeister*, 225 Kan. 807, 810, 594 P.2d 226 (1979) ("There is a paucity of case law on the question [of whether disclaimers to a will are valid]. The vast bulk of the law of decedents' estates involves persons attempting to gain a share or increase their share of the estate rather than divest themselves of their interest. It may be more blessed to give than to receive, but the case law indicates the litigants are usually concerned with more worldly interests.").

*Strom v. Wood*, 100 Kan. 556, 164 Pac. 1100 (1917), however, is helpful. In *Strom*, the decedent willed certain property to his wife for life, but if she remarried or became incapable of looking after the property, the property was to be distributed according to the law of descents and distributions. Six years after the decedent's death, a creditor executed against one of the decedent's children, H.C. Strom. H.C. filed a formal disclaimer, stating that he declined to accept any interest in the real estate involved. In determining that H.C. was precluded from disclaiming, our Supreme Court stated:

"The devise being beneficial, the presumption of acceptance having existed for more than six years, the interest being *the present vested estate belonging to [H.C.]*, it could not be maintained had [H.C.] died during this time without renouncing or disclaiming, that this estate did not descend and pass like other property owned by him." 100 Kan. at 561.

It appears that the *Strom* court rationalized that H.C. was precluded from disclaiming because the interest vested, since he did not attempt to disclaim within a reasonable time.

Here, under the common law, Pearl could not disclaim fee simple title to Tract 2 once that interest vested in her and the inclusion of an undivided one-half interest of that property in the probate estate cannot be construed as a disclaimer. As a result, the original

judgment of the probate court distributing an undivided one-half interest in Tract 2 is void.

In any event, even if under the common law a surviving joint tenant could disclaim his or her fee simple title to property after that interest vested, the actions constituting disclaimer must be intentional and affirmative. "Disclaimer requires an affirmative act by the disclaimant or his personal representative." *Disclaimer Statutes*, 20 Wash. L. J. at 50, n. 61. "It is beyond dispute that the definition of 'disclaimer' envisions a conscious, voluntary act." *City Nat'l Bank & Trust Co. v. U.S.*, 203 F. Supp. 398, 402 (S.D. Ohio 1962), *aff'd* 312 F.2d 118 (6th Cir. 1963), *cert. denied* 373 U.S. 949 (1963); see *In re Estate of Troemper*, 160 Kan. 464, 471, 163 P.2d 379 (1945) ("It is well-established law that rights of inheritance are not denied to a surviving spouse except upon a clear showing that such rights had been renounced. Contracts relied upon to show such renunciation will not be so construed unless such intention unmistakably appears.").

Here, the record does not clearly demonstrate that Pearl intended to disclaim fee simple title to Tract 2. Although it is undeniable that an undivided one-half interest in Tract 2 was included in Edward's probate estate, it is unclear whether the inclusion was an act of disclaimer or whether the interest was included in error. Even if disclaimer of a vested property interest was permitted under the common law, it cannot be said that Pearl affirmatively and intentionally disclaimed fee simple title to Tract 2.

Because Pearl did not disclaim fee simple title to Tract 2, Eugene did not acquire any interest in Tract 2 under the will and PCA's mortgage purporting to cover such an interest is void. In light of this finding, it is unnecessary to consider the other issue raised by the Maters on appeal.

*PCA's Cross-appeal*

On cross-appeal, PCA argues that the probate court erred in denying its request for fees and expenses because the Maters violated K.S.A. 1998 Supp. 60-211(b)(1) by suppressing from the probate court their knowledge that PCA had an adverse interest in the Maters' nunc pro tunc order.

The probate court denied PCA's request for attorney fees after finding that the Maters presented a meritorious argument and issue to the court. "The assessment of costs and attorney fees lies within the sound discretion of the trial court, and its determination will not be reversed on appeal absent a showing of an abuse of discretion. If any reasonable person would agree with the trial court's decision, appellate courts will not disturb the trial court's decision." *Horsch v. Terminix Int'l Co.*, 19 Kan. App. 2d 134, Syl. ¶ 7, 865 P.2d 1044 (1993), *rev. denied* 254 Kan. 1007 (1994). This is an extraordinarily high standard.

Based upon our review of the record, a reasonable person could agree with the trial court's refusal to award fees and costs to PCA.

Reversed. Cross-appeal is affirmed.