No. 49,005

In the Matter of the Estate of Walter L. Laue, Deceased. MARIE A. LAUE, Executrix, *Respondent-Appellee,* v. JOHN LAUE, JANET KADEL, ELAINE WELLS, DeANN LAUE, and NANCY LAUE, *Petitioners-Appellants.*

(589 P.2d 558)

Opinion filed January 20, 1979.

*Stephen Jones,* of Coffman, Jones, and Gilliland, of Lyndon, argued the cause and was on the brief for the appellants.

*Marian M. Burns,* of Burns and Burns, P. A., of Lyndon, argued the cause and *Clyde Burns,* of the same firm, was with her on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a controversy over the construction of a will. The facts in the case are not disputed and are as follows: On October 14, 1966, Walter L. Laue and Marie A. Persinger were married. It was the second marriage for both. Walter had five children by his prior marriage. They petitioned for a construction of their father's will. Marie also had five children by her previous marriage. They are not parties to the present litigation. Walter brought to the marriage four tracts of land consisting of a total of 440 acres. Marie brought to the marriage a single tract of land consisting of 100 acres. Following the marriage, Walter and Marie resided on the 100-acre tract formerly belonging to Marie and it became their homestead.

Walter and Marie had been married approximately four months when, on February 28, 1967, they executed two deeds conveying all of the real property owned by them individually prior to the marriage to themselves as tenants in common. The two deeds were prepared by Burns and Burns, attorneys, of Lyndon, Kansas. Both deeds were acknowledged on the date they were executed. The Burns law firm also prepared separate wills for Walter and Marie, which were executed by each of them at the Burns office on March 8, 1967. The separate wills of the parties were identical in regard to the disposition of the homestead property and in every other respect except that each party by the residuary clause gave all of his or her own property in trust to his or her children by the prior marriage. Walter and Marie each consented in writing to the will of the other. The wills and consents were executed before the same witnesses at one sitting. The only portions of Walter's will which are material in this case are paragraphs third and fourth, which provide as follows:

"THIRD: I hereby devise and bequeath all my interest in and to the homestead, occupied by me at the time of my death, to my spouse, Marie A. Laue, for her life, hereby granting her the power in her lifetime to sell, encumber or dispose of said property or any part thereof as she sees fit. Any part of said property remaining undisposed of at the time of her death is devised and bequeathed to the Trustee hereafter named for the purposes and on the terms and conditions hereafter set out.

"FOURTH: I hereby devise and bequeath all the rest and remainder of my property, real, personal or mixed, of whatsoever kind or nature and wheresoever situated and whether now owned or hereafter acquired by me and regardless of the manner in which title is held, after the payment of the above items, to the Trustee hereafter named for the purposes and upon the terms and conditions as follows: . . . ." (Walter's five children are named as sole beneficiaries of the trust created by paragraph fourth of Walter's will.)

At the end of Walter's will is the consent signed by Marie A. Laue which, omitting the signatures of Marie and the witnesses, provides as follows:

"CONSENT OF WIFE, MARIE A. LAUE

"I, Marie A. Laue, Wife of said Walter L. Laue, have read the above and foregoing Will of Walter L. Laue, dated March 8, 1967, and further understand the same, and I am further informed and advised of my rights under the Laws of Kansas; and I do hereby agree and consent to the said will and all of the provisions thereof.

"IN WITNESS WHEREOF, I have signed this consent in writing and have acknowledged the same to be my free and voluntary act in the presence of the witnesses whose names are signed hereto on this 8th day of March, 1967."

The language used in Marie's will is similar to that used in Walter's will except that in paragraph third Marie devised her interest in the homestead to Walter for life with remainder to her children and in paragraph fourth she devised all of the rest and remainder of *her* property in trust for the benefit of her children by the prior marriage.

On March 10, 1967, the two deeds that had previously been executed by Walter and Marie on February 28, 1967, were filed for record. On August 19, 1974, Walter died. On September 24, 1974, Walter's will was admitted to probate. Marie A. Laue qualified as executrix. On April 25, 1975, Marie, as executrix, filed an inventory and appraisal of Walter's estate. She listed in the inventory an undivided one-half interest in the homestead, being the 100 acres which Marie had brought into the marriage. She also listed an undivided one-half interest in four tracts of land, being the 440 acres which Walter had brought into the marriage. At the time of Walter's death, by virtue of the two deeds, the title to all of this real estate stood in the names of Walter and Marie Laue as tenants in common. Also included in the inventory were a checking account and a savings account at the Lyndon State Bank, three certificates of deposit, twenty-eight United States Savings Bonds, and a 1971 Plymouth Valiant automobile. All of these items of personal property were held in the names of Walter and Marie as joint tenants with the right of survivorship. The inventory designated this jointly-held personal property as non-probate assets belonging to Marie as the surviving joint tenant.

At this point, a dispute arose between Walter's five children and Marie as to their relative rights to the property inventoried in Walter's estate. On June 24, 1975, Walter's five children filed a petition for construction of Walter's will. The petition was certified by the probate court to the district court for hearing. On June 20, 1976, an evidentiary hearing was held in district court. At this hearing, over the objection of Walter's children, Marie Laue was permitted to testify as to all of the factual circumstances which are set forth above. She identified the various tracts of real estate and different items of property that she and Walter had brought into the marriage. Marie's will was admitted into evidence. Following the oral testimony, the parties stipulated as to certain matters and the record was closed.

On December 13, 1976, the district court entered judgment and

filed its memorandum decision. The district court determined that, under paragraph third of Walter's will, the decedent's undivided one-half interest in the homestead passed to Marie for her life with the remainder in trust for the benefit of Walter's children. The court further held that, under paragraph fourth of Walter's will, the decedent's undivided one-half interest in the four tracts of real estate passed in trust to Walter's children. The court further determined that all of the personal property held in joint tenancy vested in Marie as the surviving joint tenant. In addition, the district court directed the probate court to fix a statutory allowance, not to exceed $7,500, for Marie as surviving spouse, under the provisions of K.S.A. 59-403, as amended effective January 1, 1976. Walter's five children perfected a timely appeal to this court.

At the outset it should be pointed out that certain property in Walter's estate is not the subject of dispute between the parties. The items in controversy are (1) the homestead which was devised under paragraph third of the will, (2) the real estate devised under paragraph fourth that belonged to Walter prior to the marriage and which at the time of Walter's death stood in the names of Walter and Marie as tenants in common by virtue of the two deeds mentioned above, and (3) the personal property that had been placed in the names of Walter and Marie as joint tenants with the right of survivorship after the wills were executed. We will consider these various items separately. The homestead of the parties consisted of the 100 acres of land which Marie A. Laue brought into the marriage. At that time the property was owned entirely by her. This property was the subject matter of one of the warranty deeds executed by the parties on February 28, 1967, which placed the title to the property in the names of Walter and Marie as tenants in common. Paragraph third of Walter's will is set forth in full above. Under paragraph third, the testator devised and bequeathed *"all my interest* in and to the homestead, occupied by me at the time of my death, to my spouse, Marie A. Laue, for her life . . . ." with a power of disposition. The paragraph then goes on to state that "any part of *said property* remaining undisposed of at the time of her death is devised and bequeathed to the Trustee . . . for the purposes and on the terms and conditions hereafter set out." The trial court, in its memorandum decision, held that the only interest in the 100 acres

affected by paragraph third of the will was the undivided one-half interest that Walter owned at the time of his death as a tenant in common with his wife. We have no hesitancy in holding that the trial court was correct in its ruling. Paragraph third of Walter's will does not purport to devise any interest that *Marie Laue* owned in the homestead. In paragraph third, Walter devised and bequeathed only *his interest* in the homestead and that interest was all that he had a right to devise. The undivided one-half interest which Marie A. Laue owned in the homestead property was her separate property which was not a part of Walter's estate.

The construction of paragraph fourth of the will of Walter L. Laue presents the next issue to be determined. That paragraph, petitioners contend, should govern the devolution of the four tracts of land, which at the time of Walter's death were owned by Walter and Marie as tenants in common, and the personal property that was owned by Walter and Marie as joint tenants with the right of survivorship. As to paragraph fourth of the will, Walter's five children contend, in substance, that all of the real and personal property in which Walter had any interest, whether standing in his name alone or in the names of himself and Marie, passed to the trustee for the benefit of Walter's five children. In arriving at this conclusion, Walter's children reason as follows: The parties had only been married about five months before Walter's will was executed; both had been married previously and had children by previous marriages whom they obviously wanted to protect as the natural objects of their bounty. Walter brought to the marriage 440 acres of land worth about $105,000. Marie brought only about 100 acres of land worth about $28,600. The deeds executed on February 28, 1967, eight days prior to the execution of the wills, were not recorded until March 10, 1967, two days after the wills were signed. From these facts, the petitioners reason that the testator's intent would have been to leave all of the real estate to his own family and to protect his wife of five months only by devising her a life estate in the homestead. They say this is what the testator intended to do when, in paragraph fourth of his will, he left "all the rest and remainder of my property . . . *regardless of the manner in which title is held*" in trust for his children. Petitioners then take the position that Marie's consent to Walter's will constituted an election on her part to take under his will and that, by such election, she

agreed that Walter's will was effective to pass to his children in trust all the property of both the testator and his consenting wife, Marie.

Marie maintains that paragraph fourth of Walter's will applies only to the property that Walter owned at the time of his death and has no application whatsoever to any property interest owned by Marie in her own right at the time of Walter's death. The trial court adopted Marie's position, holding that paragraph fourth of Walter's will affected only Walter's undivided one-half interest in the four tracts of land. As to Marie's undivided interest in that real property as a tenant in common, it was her separate property and not properly a part of Walter's estate.

In support of their petition, the petitioners argue that the execution of the deeds creating the tenancy in common in Walter and Marie was not effective until March 10, 1967, the date on which the deeds were recorded. The petitioners reason that, as the deeds were not recorded until March 10, two days after Walter's will was executed, the reference in the will to all of *his property* must be construed to include all of Walter's fee simple ownership in the 440 acres. The apparent basis for the petitioners' argument is that the deeds were not effective prior to the date they were recorded. We find this contention without merit. In the absence of any showing to the contrary, a deed is presumed to have been delivered on the date it was executed and acknowledged. *Clark v. Akers,* 16 Kan. 166 (1876). That date was February 28, 1967. The petitioners offered no evidence to show that the deeds were not delivered on the date they were executed and acknowledged. The trial court was correct in holding that the deeds took effect on February 28, 1967, prior to the execution of the will and that on the date the wills were executed title to all of the real estate of the parties stood in the names of Walter and Marie, each owning an undivided one-half interest as a tenant in common. Actually, in this case it is not important when the deeds became effective. K.S.A. 59-613 provides that all property acquired by the testator after making his will shall pass thereby in like manner as if possessed by him at the time when the testator made his will unless a different intention appears in the will. The general rule, of course, is that a will speaks from the time of the testator's death unless it plainly shows a contrary intention, and is to be construed as operating according to conditions then existing. *In re Estate of Ellertson,* 157 Kan. 492, 142 P.2d 724 (1943).

As an alternative argument, the petitioners contend that, even if the deeds were effective at the time of the execution of the will, Marie's consent to her husband's will was, in effect, an election to take under his will and, therefore, she agreed that her own property pass under Walter's will. In support of their position, the petitioners cite *In re Estate of Rooney,* 181 Kan. 1029, 1039, 317 P.2d 416 (1957), for the proposition that, where a testator devises property, title to which is held by his wife, and she has given her written consent to such testamentary disposition, she thereby renounces her right of ownership in her own property which was included in the devised property. The rule of *Rooney* is not applicable in this case. Paragraph fourth of Walter's will, which devised the residue of his estate to the petitioners, clearly states that he devises and bequeaths "all the rest and remainder of *my* property, real, personal or mixed . . . whether now owned or hereafter acquired by me . . . ." By its very terms, paragraph fourth of Walter's will applies only to property owned or thereafter acquired by Walter. In *Rooney,* the testator with his wife's consent devised the *entire* interest in a specifically described tract of land in which his wife had a one-half interest. Here Walter simply devised *his* interest in any land owned or partially owned by him. The petitioners also rely in part on *Berry v. Berry,* 168 Kan. 253, 212 P.2d 283 (1949). *Berry* involved a joint, mutual, and contractual will of a husband and wife. The court found that the joint will of the parties, being contractual, by its terms terminated the joint tenancy and that, having elected to take under the will, the widow owned only a life estate even though she had previously owned an undivided one-half interest in the property as a joint tenant. To construe paragraph fourth of Walter's will in the manner suggested by the petitioners would contradict the plain language of the will and, when considered together with Marie's will, would lead to an illogical and unjust result, namely the passing of both spouses' property to the children of the spouse who died first. The surviving spouse, whether Marie or Walter, would receive only a life estate in the homestead and forfeit all rights to any other property in which he or she previously had an interest.

At the trial the petitioners challenged the admission of Marie A. Laue's will into evidence. Simply stated, Walter's children argue

here that the admission of Marie's will into evidence constituted error because Walter's will is unambiguous and the introduction of evidence outside of Walter's will to supply an interpretation of his will should not have been permitted. The surviving widow and the trial court took the position that the primary issue presented in the case included not only the construction of the will of Walter but also a construction of Marie's consent to the will. Marie, in her brief, points out that the two wills were executed contemporaneously and contained similar language and provisions. She argues that, in determining the overall scheme and intent of the testator, it was necessary to look at the surrounding facts and circumstances at the time the will was executed. In our judgment the trial court properly permitted Marie Laue to testify as to the circumstances surrounding the execution of the two deeds, the two wills, and the two consents. It is a cardinal rule of testamentary construction that, whenever possible, the testamentary plan or scheme of the testator should be upheld and given effect. *In re Estate of Showers,* 207 Kan. 268, 485 P.2d 299 (1971). While extrinsic evidence of the testator's intent may not be admitted to give unambiguous language of his will a different meaning (*In re Estate of Loomis,* 202 Kan. 668, 451 P.2d 195 [1969]), evidence may be admitted to show the "surrounding facts and circumstances" at the time the will was executed. *Schauf v. Thomas,* 209 Kan. 592, 498 P.2d 256 (1972). The evidence of the surrounding circumstances allows the court in construing the provisions of a will to place itself in the shoes of the testator at the time he made the will and to determine as best it can the purpose and intention he endeavored to convey by the language used. *In re Estate of Lehner,* 219 Kan. 100, 547 P.2d 365 (1976); *In re Estate of Kuhn,* 208 Kan. 292, 491 P.2d 937 (1971). To the extent that there may have been some degree of ambiguity on the question whether Marie Laue consented to the transfer of her own jointly owned property by her husband's will to his children, we believe that the trial court correctly admitted her will into evidence.

As another point on the appeal, the petitioners, applying their construction to paragraph fourth of Walter Laue's will, maintain that the trial court erred in failing to hold that all of the inventoried personal property owned in joint tenancy by Marie and Walter passed to his children as beneficiaries of the trust under

that paragraph. The property in dispute consisted of bank accounts, certificates of deposit, savings bonds, and a 1971 Plymouth Valiant automobile, all owned by Walter and Marie as joint tenants with the right of survivorship on the date of Walter's death. The distinguishing feature of a joint tenancy in real or personal property is the right of survivorship, by virtue of which the entire estate, on the death of one of the joint tenants, goes to the survivor.

It is hornbook law that neither joint tenant can, without the consent of the other, dispose of his interest in the joint property by will and thereby defeat the right of survivorship. See *Johnson v. Capitol Federal Savings & Loan Assoc.*, 215 Kan. 286, 524 P.2d 1127 (1974), involving a joint savings account. For a discussion of the general rule see 1 Bartlett's Kansas Probate Law and Practice § 457, p. 550 (rev. ed. 1953). Under the usual application of these rules, any of the personal property owned by Walter and Marie as joint tenants at the time of Walter's death would become the sole property of Marie by virtue of the right of survivorship and such property would not be included as part of the assets of Walter's estate.

The argument made on behalf of Walter's five children is essentially the same as that which is outlined above in connection with their claim to Marie's undivided interest in the real property which Walter and Marie owned as tenants in common at the time of Walter's death. The trial court held that all the personal property held in joint tenancy on Walter's death belonged to Marie as surviving joint tenant and was not a part of Walter's estate. In our judgment, the trial court was correct in reaching such a conclusion. The reliance of Walter's children on *In re Estate of Rooney* is misplaced. In *Rooney,* the real property was held in joint tenancy before the will was executed, it was specifically devised in the will to a third party, and the wife as joint tenant was found to have voluntarily consented to her husband's testamentary disposition. The basis of the decision in *Rooney* was that the wife, as surviving joint tenant, having given an unqualified general consent to her husband's will in which he specifically devised her real estate, was bound by her election and was estopped to deny the right of her husband to devise the jointly held real estate as his own property. A joint tenancy may be converted into a tenancy in common by an inter vivos conveyance

to a third person by one of the joint tenants or by a contract mutually entered into by the joint tenants. In *Berry*, it was held that a joint tenancy was terminated by a joint contractual will where the parties so agreed. In this case there is no evidence of an inter vivos conveyance nor evidence of a contract between the parties which terminated the right of survivorship.

The evidence in this case does not justify a conclusion that Marie Laue is estopped to assert her right of survivorship in the personal property held by herself and Walter as joint tenants. The joint tenancy property was accumulated by the efforts of both Walter and Marie long after their wills were executed. We find nothing in Walter's will or Marie's consent to such will requiring a departure from the general principles of law applicable to the rights of a surviving joint tenant which are discussed above.

The final point raised by Walter's children is that the district court erred in directing the probate court to fix a statutory widow's allowance in favor of Marie Laue in a sum not to exceed $7,500. Prior to January 1, 1976, K.S.A. 1974 Supp. 59-403 provided as follows:

"**Allowance to spouse and minor children.** When a resident of the state dies, testate or intestate, the surviving spouse shall be allowed, for the benefit of such spouse and the decedent's minor children during the period of their minority, from the personal property of which the decedent was possessed or to which he was entitled at the time of death, the following:

"(1) The wearing apparel, family library, pictures, musical instruments, furniture and household goods, utensils and implements used in the home, one automobile, and provisions and fuel on hand necessary for the support of the spouse and minor children for one year.

"(2) A reasonable allowance of not less than seven hundred fifty dollars ($750) nor more than three thousand five hundred dollars ($3,500) in money or other personal property at its appraised value in full or part payment thereof, with the exact amount of such allowance to be determined and ordered by the court, after taking into account the condition of the estate of the decedent.

"The property shall not be liable for the payment of any of decedent's debts or other demands against his estate, except liens thereon existing at the time of his death. If there are no minor children, the property shall belong to the spouse; if there are minor children and no spouse, it shall belong to the minor children. The selection shall be made by the spouse, if living, otherwise by the guardian of the minor children. In case any of the decedent's minor children are not living with the surviving spouse, the court may make such division as it deems equitable."

It should be noted that, in section (2), discretion is given to the probate court to order an allowance to the widow in an amount not less than $750 nor more than $3,500. The 1975 legislature

amended 59-403 by increasing the maximum allowance from $3,500 to $7,500 effective January 1, 1976. In the present case, the wills were executed on March 8, 1967, and Walter Laue died on August 19, 1974. Walter's will was admitted to probate on September 24, 1974, and the inventory of Walter's estate was filed on April 25, 1975. The controversy then arose over the construction of Walter's will and it was not until December 13, 1976, that the district court filed its memorandum decision in which it directed the probate court to fix the widow's statutory allowance in an amount not to exceed $7,500. The trial court obviously relied upon the amendment to 59-403 which became effective on January 1, 1976.

The petitioners argue that the trial court erred in fixing a statutory allowance at that figure for two reasons: First, they contend that, since Marie Laue consented to Walter Laue's will, she waived any right to her statutory allowance and was not entitled to any allowance at all. We find this contention to be without merit. Under K.S.A. 59-404, it is specifically provided that the surviving spouse's election to take under the will of the decedent and consent thereto does not waive her right to the statutory allowance unless it clearly appears from the will that the provision therein made for the spouse was in lieu of such allowance. *In re Estate of Barnett,* 207 Kan. 484, 485 P.2d 1290 (1971), holds that, even when there is a joint, mutual, and contractual will, the homestead right and statutory rights of a surviving spouse are not precluded unless it clearly appears from the will that its provisions are intended to be in lieu of such rights. We find no language in either the will of Walter Laue or the consent thereto executed by Marie Laue which even suggests that the provisions therein made for Marie Laue were intended to be in lieu of her statutory allowance. She is entitled to it.

The petitioners maintain, however, that, even assuming Marie Laue is entitled to her widow's allowance under 59-403, the maximum allowance permitted is that contained in 59-403 as it provided prior to the amendment that became effective January 1, 1976. They argue that the 1975 amendment should not be applied retrospectively since it involves substantive rather than procedural rights. The general rule often stated is that a statute operates prospectively unless the language of the statute clearly shows that it is the intention of the legislature that it operate retrospectively.

*Eakes v. Hoffman-LaRoche, Inc.,* 220 Kan. 565, 552 P.2d 998 (1976); *In re Estate of Brown,* 168 Kan. 612, 617, 215 P.2d 203 (1950); *In re Estate of Cramer,* 159 Kan. 693, 158 P.2d 383 (1945); *In re Estate of Reed,* 157 Kan. 602, 142 P.2d 824 (1943). It is also the rule that when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether suit has been instituted or not, unless there is a saving clause as to existing litigation. This raises the question whether an increase in the statutory allowance affects substantive or only procedural rights.

In K.S.A. 59-403 it is declared that the property set apart under that section shall not be liable for the payment of any of decedent's debts or other demands against his estate. Furthermore, under the first paragraph of 59-403, the surviving spouse is entitled to an allowance *when a resident of the state dies* and it is to be satisfied from the personal property of which the decedent was possessed or to which the decedent was entitled *at the time of death.* The statute also uses language to the effect that such property shall *belong* to the spouse or minor children of the decedent. The statutory allowance does not involve a mere remedy or procedure. The word "procedural" has been defined as the machinery for carrying on the suit, including pleading, process, evidence, and practice. *Jones v. Garrett,* 192 Kan. 109, 386 P.2d 194 (1963). From these provisions we have concluded that the statutory allowance under K.S.A. 59-403 is a matter which involves substantive rights. A statutory amendment which increases the allowance under K.S.A. 59-403 is to be applied prospectively, not retrospectively. The maximum widow's allowance on August 19, 1974, the date of death, was $3,500. We hold that the trial court erred in directing the probate court to fix a statutory allowance not to exceed $7,500 for the surviving spouse when the maximum amount allowable on the date of death was $3,500. The case must be reversed on this point.

For the reasons set forth above the judgment of the district court is affirmed on all points raised on the appeal except in its authorization to the probate court to fix a statutory widow's allowance in excess of $3,500.