(603 P.2d 654)

No. 51,070

In the Matter of the Estate of Claude Means, Deceased.

Opinion filed December 7, 1979.

*Frank T. Forbes,* of Forbes & Smith, of Burlington, for appellant Eva M. Means.

*Orville J. Cole,* of Cole & Doering, of Garnett, for appellee Ona Mae Hunt, administratrix c.t.a.

*Wayne Loughridge,* of Loughridge & Solander, of Garnett, for appellee Marjorie K. Means.

Before FOTH, C.J., ABBOTT and REES, JJ.

ABBOTT, J.: This is an appeal by Eva M. Means, widow of the decedent, from an order construing the last will and testament of Claude Means, deceased, so as to include as assets of the estate $97,000 in certificates of deposit and passbook savings that were held jointly by Claude and Eva M. Means at the time Claude

Means executed his will and it was consented to by Eva M. Means.

The scrivener of the will was Bert L. Woods, now deceased. The will in pertinent part reads:

"I, Claude Means, a resident of Anderson County, Kansas, being of lawful age, sound and disposing mind and memory, but mindful of the uncertainty of this life and desiring to make disposition of my property while in health and strength do make, publish and declare the following to be my Last Will and Testament hereby revoking any and all former wills or codicils thereto by me at any time heretofore made.

"1. Upon my death I direct that all just debts, funeral expenses, administrative expenses and taxes be fully paid.

"2. I hereby designate and appoint as Executor of this my Last Will and Testament, Bert L. Woods of Garnett, Kansas, and direct that he be permitted to qualify and serve without bond and that he have full power and authority to sell, transfer, and convey both real and personal property without court order or court direction.

"(a) By the terms of this Will I am creating a trust and I direct that the said Executor continue as Trustee after final settlement of said estate to look after, manage, and control the assets of my estate as herein provided.

"3. I give, devise and bequeath to my wife, Eva M. Means, a one-half part of my estate without restriction, limitation, or reservation and to be distributed to her as by law provided, providing she survives me.

"(a) In addition to such one-half part, I direct that she receive the household goods, automobile and such property as shall be exempt under the laws of the State of Kansas and I direct that the amount of funds to be placed in trust will not exceed the marital deduction under the provisions of the United States Revenue Code in computing the Federal Estate taxes on my estate and the trust herein established shall be known as "Marital Trust" and shall be held and administered by the Trustee for the benefit for my wife with the powers and duties and on the terms hereinafter set out.

"4. The remaining one-half part of my estate shall be held in trust and not distributed to any devisee until after the death of my wife, Eva M. Means, and upon her death I direct that such remaining funds be distributed in the following manner, to-wit:

. . . . [The individual bequests with a potential value of $120,000 are omitted.]

"5. In event my said wife, Eva M. Means, does not survive me then distribution of my estate shall be made to the remaining devisees as herein directed without unnecessary delay and upon final settlement and distribution as by law provided.

"6. All remaining real and personal property to be sold for cash upon the death of my wife and after expenses are paid, whatever remains is hereby devised and bequeathed, share and share alike, to Marjorie K. Means; the Anderson County Hospital, Garnett, Kansas; and Eula Cudney. In event any devisee should not survive me or my wife, such bequest shall revert to my estate and become a part of the residue, except the bequest to Eula Cudney, Margaret Katzer, Esther Ambler or Daisy Grimes. In payment of taxes herein the Executor is not directed to pay

inheritance taxes from my estate assets, but each respective devisee shall pay his or her own inheritance taxes.

"(a) In event Eula Cudney should not be living at the time of the death of my wife, then that share bequeathed to her shall pass to Marjorie K. Means, along with the other funds devised and bequeathed to her.

"7. In event the assets of my estate should not be sufficient to cover all of the bequests made herein in full, after payment of debts, costs, administrative expenses, and taxes, then the remaining assets shall be pro-rated in proportion to the amount devised to each respective devisee.

"8. Providing I precede my wife, Eva M. Means, in death, then the trust portion of the assets shall be held in trust for the exclusive use and benefit of the said Eva M. Means and my trustee is authorized and directed to pay to her from the income thereof sufficient funds for her keep, support, maintenance, and medical expenses.

"9. The trustee herein shall have full power to look after, manage, and control the assets of said trust with power to sell and convey real and personal property at either public or private sale, to pay all costs and administrative expenses necessary in the management of said trust; to pay taxes; to collect funds and profits due; to reinvest funds in said trust assets as he shall deem proper and to the best interest of my said estate.

. . . . [Terms of the trust are omitted. It appears the trustee has no right to invade the corpus for any reason during the lifetime of Eva M. Means.]

"IN WITNESS WHEREOF, I have hereunto set my hand to this my Last Will and Testament, at Garnett, Kansas, this 8th day of April, A.D., 1975."

[Signature and witness clause omitted.]

## The consent, excluding the signature and witness clause, reads:

"I, Eva M. Means, being the wife of Claude Means, state that all my rights under Kansas law have been explained to me and I hereby consent to the terms and conditions of the above and foregoing Will of Claude Means and hereby ratify and confirm said Will in every respect.

"I further state that I have on this date executed a Last Will and Testament wherein and whereby all of my assets are devised and bequeathed to Claude Means, if he survives me, so that all property owned by us jointly and severally can be disposed of in the manner provided for in the Last Will and Testament of the said Claude Means, and in said Will I further directed that upon my death all property remaining in said estate, that is all property remaining in my hands including trust assets are hereby transferred and set over to the trustee under the Will of my husband, Claude Means to be distributed in the manner provided for in the above and foregoing Will and all property including trust assets and my personal property and real estate as may be owned by me shall be transferred and will merge with said trust to be distributed as provided for in the Will of my husband.

"Witness my hand this 8th day of April, A.D., 1975."

## On the same date, although before different witnesses, Eva M. Means executed her own will which, excluding signature and witness clause, reads as follows:

"I, Eva M. Means, the wife of Claude Means, do on this date make, publish and

declare the following to be my Last Will and Testament hereby revoking any and all former wills by me at any time heretofore made.

"1. Upon my death I direct that all just debts and funeral expenses together with costs, taxes, and administrative expenses be fully paid.

"2. I designate and appoint as Executor of this my Last Will and Testament Bert L. Woods of Garnett, Kansas, and direct that he be permitted to qualify and serve without bond and that he have full power and authority to sell, transfer and convey both real and personal property without court order or court direction.

"3. In event my husband, Claude Means, survives me, then I give, devise and bequeath all my property, after payment of costs, debts, taxes and expenses to the said Claude Means without restriction or reservation.

"4. In event my husband precedes me in death and is not living at the time of my death, then and in that event I give, devise and bequeath all remaining property to the Trustee appointed in the Last Will and Testament of Claude Means bearing date of April 8, 1975 and direct that said Trustee distribute all property, both real and personal to the remaining devisees mentioned in his Will and that my assets shall merge with the trust assets and all be distributed as one estate and as one unit.

"5. It being my intention that all the property owned by me in my own right, both real and personal, be distributed in a like manner and in the same proportion as provided in the Will of my husband, Claude Means.

"IN WITNESS WHEREOF, I have hereunto set my hand to this my Last Will and Testament at Garnett, Kansas, this 8th day of April, A.D., 1975."

Mr. Means died on April 15, 1976, and the will with the written consent thereto was subsequently proved and admitted to probate. Ona Mae Hunt qualified as executrix on May 21, 1976, and at the same time the widow, Eva M. Means, filed her election to take under the will.

On December 29, 1976, Ona Mae Hunt filed a petition for final settlement. A written defense thereto was filed by Marjorie K. Means, daughter of Claude Means and stepdaughter of Eva M. Means, and among other allegations she alleged that the estate tax returns revealed $107,000 in personal property not inventoried in the estate. The case was then transferred from the magistrate district judge to a district judge. Eva M. Means answered, stating that the $107,000 was composed of certificates of deposit and savings accounts held in joint tenancy with the right of survivorship. The record before us establishes that $92,000 was held in joint tenancy and $15,000 was held as tenants in common.

The jointly held property was not inventoried in the estate, but was reported for inheritance and estate tax purposes as joint tenancy property passing to Eva M. Means. Eva M. Means further denied that her consent was a contract. Excluding the jointly held property, the estate was appraised at $100,443.86.

A pretrial conference was held and contentions by Marjorie K. Means concerning the jointly held property were:

"(a) That the execution of the consent by Eva Means to the decedent's Last Will and Testament terminated the joint tenancy by which the certificates of deposit, savings accounts, and other written evidence of indebtedness jointly owned by the decedent and Eva Means and that this property is to be treated as part of the estate of the decedent and is subject to the trust created by decedent's Will.

"(b) That the writing designated as· Consent to the Will contains the written provisions whereby Eva Means agreed in writing that the property owned by her and the decedent jointly and severally was to be administered in the decedent's estate and distribution of the same made and administered as a part of the decedent's estate. That said writing in the form of a consent to the decedent's Will constituted an agreement and contract by which Eva Means is bound and is not entitled to own or hold the jointly owned personal property separately and apart from the estate and that said writing brings the jointly owned property within the trust provisions of the decedent's Will."

Marjorie K. Means neither relies on the will as being joint, mutual, reciprocal and contractual, nor contends that it is so; the trial judge did not find it to be, and that issue is not before us.

The trial court determined that a $10,000 certificate issued in joint tenancy on March 3, 1976 (after the will was executed), passed to Eva M. Means as the surviving joint tenant. None of the parties to this appeal question that decision. They do, however, question the decision as to the remaining $97,000. The trial judge determined that $82,000 of that figure was held in joint tenancy by the decedent *and* Eva M. Means on April 8, 1975, the date of the execution of the will and consent. The remaining $15,000 savings deposit was determined to be held as tenants in common by Claude Means *or* Eva M. Means. The trial judge then determined that the joint tenancy ownership of the personal property was terminated on April 8, 1975, by the execution of the will and the spouse's consent thereto. The trial judge reasoned:

"The widow's contention that In re: Rooney Estate [181 Kan. 1029] applies only if the jointly held property is the subject of a specific bequest is not well taken. See, for example, Brooks v. Olson, 170 Kan. 138. Surely the only real test is one of identifying that jointly held property which is the subject of an effort or mutual agreement to terminate the survivorship aspects of the holding. Each joint tenant while living has a vested identical interest. In re Estate of Shields, 1 KA 2d 688. While one joint tenant may not unilaterally terminate the interest of the other, under the general rule a joint tenancy may be terminated by a contract or by mutual agreement among the tenants. Wilcoxen v. U.S., 310 F. Supp. 1006 (D. Kansas). In the matter of the Estate of Walter L. Laue, deceased, 225 Kan. 177. (Syl. 3)

"There is little question that both decedent and widow intended the jointly held property in existence on the date the will was executed would become a part of and pass under the decedent's will. Of note is the fact the efforts to achieve a full federal estate tax marital deduction and the benefits accruing therefrom were then and are now meaningless if the will and consent did not terminate the joint tenancy vesting. To pass to the trust created by the will only the farm as trust corpus, the personal property inventoried being insufficient to cover expenses of administration, leaves grave doubt that any of decedent's bequests could have been paid in full upon Mrs. Means' death. Notable also is that the bequests go to her relatives as well as to his upon termination of the trust.

"Deciding the matters above mentioned was deferred pending the decision in In re: Laue Estate, supra. In respect to that decision, Mrs. Means relied herein on the use by decedent of the expressions 'all my interest' and 'all the rest and remainder of my property', and in particular the pronoun 'my' as reaching only property solely owned by decedent at his death. Construing the will and the consent together from the four corners of the document the word 'my' must give way to the expression 'all property owned by us jointly or severally' which is employed by Mrs. Means. Her present position is completely contra to the clear meaning of her executed consent."

The widow, Eva M. Means, appeals.

Marjorie K. Means contends simply that *Brooks v. Olson,* 170 Kan. 138, 223 P.2d 721 (1950), *In re Estate of Rooney,* 181 Kan. 1029, 317 P.2d 416 (1957), and *In re Estate of Laue,* 225 Kan. 177, 589 P.2d 558 (1979), are conclusive that the will and consent terminated the survivorship feature of joint ownership in the savings accounts and certificates of deposit owned by the decedent and his spouse at the time of the execution of the decedent's will and the spouse's consent. Counsel for Marjorie K. Means adopts the position that *Rooney* does not require the property to be specifically described, but does require it to be described with sufficient clarity to be identifiable to the person consenting and thus binding on that person.

At the outset we are puzzled by the inconsistencies in the decision handed down by the trial court if our interpretation of the position taken by both the trial court and Marjorie K. Means is correct.

The will of Claude Means refers only to "my property." If the consent is severed from the will, there is absolutely no possibility of construing the will to refer to any property or interest in property owned by Eva M. Means. If the property in question passes by virtue of the will of Claude Means, it necessarily must do so as a result of language found in the consent. Does the consent amount to a contract on the part of Eva M. Means to

terminate the joint tenancy ownership? We think not. The first paragraph of her consent to the will is clearly her consent to take pursuant to his will. The second paragraph appears to us to be a mere acknowledgment that she is drawing a will and of the manner in which she is disposing of her property. She specifically refers to "all property owned by us jointly and severally" and includes "all property including trust assets and my personal property and real estate as may be owned by me." Thus, it appears to us that if the trial court is correct, *all property* of Eva M. Means would pass under the will of Claude Means. No effort was made to bring in assets that were owned solely by Eva M. Means at the time the will and consent were executed, yet the trial court did include a $15,000 savings deposit that was held by the decedent and Eva M. Means as tenants in common when the will and consent were signed, thus bringing into Claude Means' estate $7,500 of Eva M. Means' property.

*Rooney* leaves many questions unanswered if the trial judge's interpretation is correct. For example, where is title vested if the joint tenancy is terminated when the will and consent are executed? In the absence of some other agreement, the joint tenancy property would become tenancy in common property and owned one-half by Claude Means and one-half by his wife, Eva M. Means. Thus, if the trial judge is correct that the joint tenancy was severed at the time the will and consent were executed, one-half of the entire $97,000 was separately owned by Eva M. Means when Claude Means died. To be consistent under the ruling by the trial judge, Eva M. Means would have lost complete control over all of her property, including that which she independently owned at the time the will and consent were executed.

We have no difficulty concluding that neither Claude nor Eva Means intended that result. This is particularly so when Eva M. Means' will is examined, for if it was her intent that all of her property be placed in trust by reason of her consent, there would be no reason for her to make a will. Title to jointly held property may not be terminated and title held in abeyance until one of the parties dies.

Perhaps the basis for the decision in *Rooney* was not that the execution of the consent amounted to an agreement to terminate the joint tenancy effective with its execution, but rather as suggested by Justice Prager in *In re Estate of Laue,* 225 Kan. at 185,

that "[t]he basis of the decision in *Rooney* was that the wife, as surviving joint tenant, having given an unqualified general consent to her husband's will in which he specifically devised her real estate, was bound by her election and was *estopped* to deny the right of her husband to devise the jointly held real estate as his own property." (Emphasis supplied.)

This case was presented to the trial court on written and documentary evidence. Since the trial court did not hear evidence and thus have an opportunity to evaluate the credibility of witnesses, this Court has as good an opportunity to examine and consider the evidence as did the trial court and determine de novo what the facts establish. *American States Ins. Co. v. Hartford Accident & Indemnity Co.,* 218 Kan. 563, Syl. ¶ 4, 545 P.2d 399 (1976). Although a joint tenancy may be converted into a tenancy in common by one of the parties transferring his or her interest to a third party, that option was not used in this case. Another method is by the mutual consent of the parties, which in this case must be found in the terms and language of the will and consent. *Berry v. Berry,* 168 Kan. 253, 257, 212 P.2d 283 (1949).

The trial judge, relying on *Brooks v. Olson,* 170 Kan. 138, rejected the argument that *Rooney* applies only if the jointly held property is the subject of a specific bequest in the decedent's will. That reliance, in our opinion, was not justified. Brooks was a creditor of Olson and levied on land to which he claimed Olson had an interest by virtue of an inheritance from his mother. A demurrer was sustained to Brooks' evidence and the Supreme Court affirmed. Olson's father was deceased and his mother had remarried. At the time she consented to the will of her second husband, she owned an undivided one-half interest in 240 acres as a cotenant with him. Her second husband died and his estate was probated. She had consented to his will, which specifically described the 240 acres. His will was construed to give Olson's mother a life estate in the 240 acres with the remainder to go to the children of her second husband. That judgment was *final* when she died. Brooks claimed Olson, as his mother's heir, owned a one-fourth interest in the property. The Court held that:

"Where a testator devises property the title to which is held by his wife and she gives her written consent to such testamentary disposition of it, the wife thereby in effect renounces her right of ownership in the devised property and bars all persons whose rights thereto must be claimed under and through her." (Syl. )

The property was specifically described in the will, as was the real estate in *Rooney.* Here, no provision of either the will or the consent to the will of Claude Means specifically mentions the property in question, nor do they indicate or even suggest that the joint tenancy bank accounts were to be tied up or restricted in any way if Eva M. Means survived Claude Means. The second paragraph of the consent does not purport to agree to transfer any ownership rights until her death. A joint tenancy can be severed only by clear intent. *In re Estate of Biege,* 183 Kan. 352, 327 P.2d 872 (1958).

From our examination of the record we cannot say that Eva M. Means is estopped to assert her rights of survivorship in the personal property held in joint tenancy, nor do the will and consent amount to a contract whereby the parties agreed to terminate their right of survivorship.

The judgment is reversed as to the jointly owned property and as to $7,500 of the Topeka Savings Association savings deposit certificate No. 00406 dated February 18, 1970, issued to Claude Means or Eva M. Means. Judgment is affirmed as to the remaining $7,500 of that certificate.