No. 53,823

In the Matter of the Trust Estate of Mayme Harbaugh, Deceased
PAULINE KATHRYN McCLARY, *Appellee,* v. PETE HAROLD HAR-
BAUGH, *Trustee-Appellant.*

(646 P.2d 498)

Opinion filed
June 11, 1982.

*Phillip S. Frick,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued
the cause and *J. Raymond Eggleston,* of Medicine Lodge, was with him on the
brief for the trustee-appellant.

*W. Luke Chapin,* of Chapin, Penny & Goering, of Medicine Lodge, argued the
cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from an order terminating a tes-
tamentary trust. Mayme Harbaugh died July 19, 1977, survived
by her three children: Pauline McClary, age 64, Louise Kirkbride,
age 62, and Pete Harbaugh, age 60. Her last will and testament,
dated October 24, 1969, was admitted to probate, and Pete, who
was named executor in the will, was duly appointed and the
estate was probated and closed.

Mayme Harbaugh's will left her farm real estate, an undivided
one-half interest in 1,040 acres, in equal shares to Pete and
Louise. These two children already owned the other one-half

interest in the property. The will made the following provision for Pauline McClary:

"All the rest and residue of my property shall, after payment of debts, costs of administration, and Federal Estate Taxes, if any, to go to Pete Harold (Pat) Harbaugh, my son, in trust, however, to manage, control, and operate said trust for the benefit of my daughter Pauline Kathryn McClary.

"My said trustee, after the payment of all costs of administering said trust, shall pay to my said daughter, Pauline Kathryn McClary, the income therefrom semi-annually.

"This trust is to continue for the natural life of my said daughter, Pauline Kathryn McClary, and upon her death and after payment of all costs of administering the trust and the expenses of the funeral of said Pauline Kathryn McClary said trust shall terminate and the assets thereof shall go to my two grandchildren, the children of said Pauline Kathryn McClary, to-wit:

1. Cherlyn Hamilton, and
2. John Michael McClary,
share and share alike.

"The said trust and my said trustee shall have the powers as provided in Article 12 K.S.A. 1968 Supp. entitled "Uniform Trustees Powers Act" and any amendments thereto, except as otherwise herein provided."

The residuary estate contained $47,615.00. It was delivered to Pete, as trustee under the will, and he invested $47,000 in a thirty-month certificate of deposit at 9.25% interest. The remaining $615.88 was deposited in a passbook savings account. Interest rates soared but Pete did not change the investment. Pete also failed to make the semi-annual distributions to Pauline on time and was late in making his annual accounting to the court. Pauline McClary and her two children became dissatisfied with Pete's performance.

On March 9, 1981, by an instrument entitled "Agreement and Conveyance," Cherlyn Hamilton and John Michael McClary assigned their remainder interest in the trust estate to their mother, Pauline McClary. On March 23, 1981, Pauline filed a "Petition to Terminate Trust Estate and Distribute to Pauline Katheryn McClary" requesting "the trust be terminated and the trust property be distributed to her after payment of any reasonable expense of administration of the trust." The magistrate judge granted the petition.

On appeal with a trial de novo the district court also granted Pauline's petition and ordered the trust terminated and the "corpus together with accumulated income paid over to Pauline." Subsequently the trustee's petition for allowance of attorney fees and expenses was denied. Both rulings are appealed to this court.

Appellant first contends it was error for the trial court to order the trust be terminated. The question here is whether once Pauline McClary obtained her children's remainder interest in the trust she could force the termination of that trust. This issue has been discussed by various authorities. In Scott on Trusts § 337.1, pp. 2658-61 (3rd ed. 1967), it is stated:

"Where a trust is created under which the income is payable to one beneficiary for life and on his death the principal is payable to another, and it does not appear that the settlor had any other purpose in creating the trust than to enable the beneficiaries successively to enjoy the trust property, the beneficiaries, if they both consent and if neither of them is under an incapacity, can compel the termination of the trust. So also where the life beneficiary acquires the interest of the beneficiary entitled in remainder, whether by conveyance inter vivos or by testate or intestate succession, he can compel the termination of the trust. . . .

. . . .

"The result is different, however, where the purpose of the settlor in creating the trust was not merely to enable the beneficiaries to enjoy the property successively, not merely to give the income to one and to preserve the principal for the other. In such a case the beneficiaries cannot terminate the trust even though they all desire to terminate it and none of them is under an incapacity, or one of them has acquired the interests of the others and wishes to terminate it. Even though the interests of the beneficiaries are alienable, the court will not terminate the trust at their request if it appears that such termination would defeat a material purpose of the settlor in creating the trust."

Similarly, Bogert, Trusts & Trustees § 1003, pp. 517-20 (2nd ed. 1962), observes:

"In a number of cases where the interests of equitable life cestui and legal or equitable remainderman have become vested in the same person by conveyance or operation of law, after the trust began, the courts have decreed that the trust was ended or terminable; but in other cases, where some useful purpose was deemed to be capable of accomplishment by the continuance of the trust, the courts have refused to regard the single ownership of the two items of property as fatal to the trust."

Finally, Restatement (Second) of Trusts § 337 (1959), states:

"(1) Except as stated in Subsection (2), if all of the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination of the trust.

"(2) If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination." p. 158.

This court recognized the above rules generally and the Restatement version specifically in *In re Estate of Sheets,* 175 Kan. 741, 748-51, 267 P.2d 962 (1954).

In light of the foregoing, the dispositive question becomes

whether termination of the case at bar would frustrate a material purpose of the trust. To determine the purpose behind the trust we must first turn to Mayme Harbaugh's will. There is no explicit purpose stated. It is thus difficult to perceive a clear purpose from reading the will as a whole. Appellant argues, however, the will is unambiguous; the purpose behind the trust was to protect Pauline McClary and termination of the trust will frustrate this purpose. He further claims it was improper for the trial court to admit extrinsic evidence to clarify the testator's intent and define the purpose of the trust.

Let us examine this issue. Appellant relies on *In re Estate of Wernet*, 226 Kan. 97, Syl. ¶ 1, 596 P.2d 137 (1979), where it is stated:

"Where a court, either trial or appellate, is called upon to determine the force and effect to be given the terms of a will, its first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction to determine its force and effect; and where from an analysis of the entire instrument no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions."

See also *Johnston v. Gibson,* 184 Kan. 109, 334 P.2d 348 (1959). Other rules governing the construction of wills naturally compliment this precept. The primary consideration in construing a will is, of course, to determine the intent of the testator. If that intent can be determined from the four corners of the will itself the will is not ambiguous and it is not necessary to give consideration to any other element. See, *e.g., Trustees of Endowment Fund of Hoffman Hosp. Ass'n. v. Kring,* 225 Kan. 499, 592 P.2d 438 (1979); *In re Estate of Showers,* 207 Kan. 268, 485 P.2d 299 (1971); *Giese v. Smith,* 195 Kan. 607, 408 P.2d 687 (1965); *Householter v. Householter,* 160 Kan. 614, 164 P.2d 101 (1945). Evidence as to the testator's intention is inadmissible for the purpose of giving unambiguous language in a will a different meaning. *In re Estate of Laue,* 225 Kan. 177, 184, 589 P.2d 558 (1979); *In re Estate of Loomis,* 202 Kan. 668, 451 P.2d 195 (1969). Obviously, then, where a will is found to be ambiguous, extrinsic evidence is admissible to assist in determining the testator's intent. Indeed, in construing the provisions of a will the court must, as near as possible, place itself in the shoes of the testator at

the time he or she made the will. Extraneous circumstances surrounding the execution of the will may assist the court in this task. *Laue,* 225 Kan. at 184; *In re Estate of Lehner,* 219 Kan. 100, 102-03, 547 P.2d 365 (1976); *Wallace v. Magie,* 214 Kan. 481, 485, 522 P.2d 989 (1974).

Restatement (Second) of Trusts § 337, Comment e, expands on the foregoing rules in the context of the particular issue involved herein:

"If the purposes for which the trust is created are expressed in the instrument by which the trust is created, a different purpose cannot be shown by extrinsic evidence. If, however, the purposes are not expressed in the instrument, extrinsic evidence of the surrounding circumstances to aid in the construction of the instrument is admissible in order to determine the purposes of the trust." p. 159.

Mayme Harbaugh's will was ambiguous with regard to the purpose of the trust. There was no specific clause or other explicit reason for the trust's creation and a reading of the will as a whole similarly provides no clue. Thus, we find no error in the trial court's admitting extrinsic evidence to explain the purpose of the trust. Actually, appellant was in greater need of parol evidence since the will articulated no purpose for the trust.

Let us now turn to the extrinsic evidence to determine if it supports the trial court's ruling that there was no material purpose frustrated by the termination of the trust. Again Professor Scott is helpful in guiding the court's examination of the evidence:

"It is more difficult to determine whether it would defeat a material purpose of the settlor in creating a trust for one beneficiary for life and another in remainder to permit the termination of the trust before the death of the life beneficiary if both consent to the termination or one of them acquires the entire beneficial interest. If the only purpose in creating the trust was to preserve the principal of the trust estate during the life of the income beneficiary so that it might ultimately be enjoyed by the remainderman, it would not defeat the purpose of the trust to terminate it before the death of the life beneficiary if both of the beneficiaries should desire to terminate it or if one of them should acquire the entire beneficial interest. On the other hand, if it was also a material purpose of the settlor to protect the life beneficiary against his own possible mismanagement of the property, the termination of the trust before his death would defeat this purpose, even though the remainderman should consent to the termination or the life beneficiary should acquire the interest of the remainderman. Whether this was one of the purposes of the settlor in creating the trust is a question of interpretation of the trust instrument in the light of all the circumstances. . . . Although the cases are not altogether in agreement, it would seem to be the prevailing view that the mere fact that the trust was created for successive

beneficiaries indicates no more than an intention to preserve the principal for the remainderman, and unless it appears from the language used in the trust instrument or from the circumstances that the settlor was desirous of protecting the life beneficiary against his own possible mismanagement of the property, the court will terminate the trust prior to the death of the life beneficiary if the remainderman consents or if the life beneficiary has acquired the entire beneficial interest. The trust will not be terminated, however, where the trust is a spendthrift trust, since in that case the protection of the life beneficiary is a material purpose of the trust." Scott on Trusts § 337.1, pp. 2663-64.

We repeat, the trust is admittedly not a spendthrift trust. The evidence regarding the testator's intent falls into two categories. First, there was testimony tending to show Mayme Harbaugh intended to treat her children equally. Second, there was evidence the purpose of the trust was to keep the money away from Pauline's alcoholic husband, Jack. He died in 1974. If the purpose of the trust was indeed to keep the money from him that purpose no longer exists and termination of the trust was proper. See Restatement (Second) of Trusts § 337, Comment i (1959).

Appellant relies heavily on *In re Estate of Sheets*, 175 Kan. 741, a case in which this court refused to terminate a trust. J. W. and Medora Sheets had executed a joint will which gave each other a life estate with power of disposal and further provided:

"II

" 'At the passing of the survivor of us, what property remains whether real, personal, or mixed shall be held in trust and our son, Joseph Edwin Sheets, shall receive the income therefrom annually during the lifetime of his present wife, Lala Baldwin Sheets, and said trust shall continue during the lifetime of our son's wife, Lala Baldwin Sheets. At the demise of our son's said wife, the trustee shall immediately transfer by whatever instrument is necessary the corpus of the estate to our son, Joseph Edwin Sheets, to be his absolutely in both interest and enjoyment as of that date.

"II

" 'If our son, Joseph Edwin Sheets, predeceases the survivor of us, then the property he would have inherited had he lived shall go to his living child or children (he now has two, Joseph Edwin Sheets and Doratha Drew) with the same restriction as to the vesting of the corpus of the estate as is set out in paragraph two above; that is to say, the living child or children of our son shall receive the income of our estate from our trustee until the passing of Lala Baldwin Sheets and then the corpus is to vest absolutely in interest and enjoyment.

"IV

" 'In explaining paragraphs two and three above, we wish to make as clearly as possible that no part of our estate other than the income therefrom shall vest in anybody other than our trustee during the lifetime of Lala Baldwin Sheets.' " 175 Kan. at 742-43.

When Joseph Edwin Sheets, the sole beneficiary, attempted to terminate the trust, the court rejected the attack because termination would frustrate a material purpose of the trust. Although *Sheets* is obviously analogous to the case at bar, there is a major difference. In *Sheets* it was clear from the will the purpose of the trust was to keep any part of the estate out of the hands of the testators' daughter-in-law and the class of ultimate beneficiaries was not yet determined. Termination of the trust would thus have circumvented the testators' intent. Here the purpose is not evident from the will itself and extrinsic evidence supports termination of the trust. We hold the trust was properly terminated.

Appellant finally argues he is entitled to an allowance for his expenses and the fees of his attorney in defending the trust. The trial court denied this request, finding the trustee proceeded in bad faith after the magistrate judge had ordered termination, and ordered a $500 fee for administering the trust.

K.S.A. 59-1717 states:

"Every fiduciary shall be allowed his or her necessary expenses incurred in the execution of his or her trust, and shall have such compensation for services and those of his or her attorneys as shall be just and reasonable. At any time during administration the fiduciary may apply to the court for an allowance upon his or her compensation and upon attorneys' fees."

According to *Jennings v. Murdock,* 220 Kan. 182, Syl. ¶ 15, 214, 553 P.2d 846 (1976), pursuant to this statute a trustee who has acted in good faith is entitled to an allowance for his compensation and expenses. Thus, it appears such an award is mandatory, conditioned solely upon the good faith of the trustee. In *Burch v. Dodge,* 4 Kan. App. 2d 503, 509, 608 P.2d 1032 (1980), the Court of Appeals stated, "The amount of compensation due the trustee and whether or not his breach of trust should be cause to reduce or forfeit that compensation lies within the sound discretion of the trial court." See also *Achenbach v. Baker,* 154 Kan. 252, 254, 118 P.2d 584 (1941). These two statements are not inconsistent. The resulting rule is that when a trustee acts in good faith he is entitled to fees and expenses but the amount of that award is within the discretion of the trial court.

76 Am. Jur. 2d, Trusts §§ 653-60, pp. 864-71, covers the subject thoroughly. Section 653 at page 865 discusses good faith of the trustee:

"The conduct with respect to the administration of the trust generally—as

distinguished from some particular fault or misconception leading to particular litigation—is sometimes mentioned by the courts as having a bearing on the question whether costs or attorneys' fees should be imposed upon the trustee as an individual. It is less likely that costs or fees will be imposed against the trustee personally if he has been diligent and faithful in his general administration of the trust, than if he has been negligent or remiss. Furthermore, a trustee who has been guilty of some irregularity in his administration of the trust may be relieved of an imposition of costs or fees if his misconduct was occasioned by ignorance rather than wilful fault."

The question of good faith of the trustees is one of fact and lies within the province of the trial court not to be disturbed on appeal unless the finding is unsupported by substantial, competent evidence. We find the trial court findings were so supported, except the trustee should be allowed attorney fees for the first hearing in the district court in the amount of $500.

The judgment of the trial court is affirmed as modified.

HOLMES, J., dissenting.