(22 P.3d 161)

No. 85,214

In the Matter of the Estate of ZETA STUMP, Deceased.

Opinion filed April 27, 2001.

*Robert E. Keeshan*, of Peterson & Keeshan, of Topeka, for the appellant.

*Richard E. Dietz*, of Dietz & Hardman, of Osborne, for the appellee.

Before KNUDSON, P.J., LEWIS, J., and WARREN M. WILBERT, District Judge, assigned.

LEWIS, J.: This is a battle between the two adult daughters of Zeta Stump over the terms of her last will and testament. One daughter, Ona Mae Maydew, seeks to recover mileage for trips made from Topeka to Lebanon, Kansas, to visit her mother. Ona Mae's claim is contested by her sister, Doris Lea Merritt. The trial court ruled in favor of the position advocated by Doris Lea, and Ona Mae appeals.

These cases are always unfortunate because of the damage they do to familial relationships. In this case, the only two children of Elmer and Zeta Stump are involved in a litigation which has become increasingly bitter over approximately $17,000. It is clear that, at times, money causes adversity in familial relationships.

Elmer and Zeta Stump resided near Lebanon. Elmer died on January 13, 1995, and after his death, Zeta continued to live at her

home with the help of her daughters. Ona Mae lived in Topeka, but made weekly trips from Topeka to Lebanon to assist with her mother's care. As a rule, she would leave Topeka on Friday and return on Monday. On the other hand, Doris Lea, whose home was in Lebanon, lived within a mile of Zeta's home and cared for her mother during the week.

It is quite obvious that Zeta wanted her daughters to be treated equally. In her last will and testament, she provided that Ona Mae should be reimbursed for mileage incurred for traveling to and from Topeka to stay with and take care of her. In January 1997, Zeta broke her hip. The ultimate result is that she was required to move into a nursing home in Downs, where she remained until her death in July 1999. During the period of time Zeta remained in the nursing facility, Doris Lea and Ona Mae continued to make weekly trips to visit with her. Ona Mae would stay in Zeta's home and maintain it when she came back for visits.

The difficulties between the sisters arose out of the proper interpretation of paragraph Eighth of Zeta's last will and testament:

"My daughters, Doris Lea Merritt and Ona Mae Maydew, have equally shared in the responsibility of taking care of me in my home and staying with me on a weekly basis since the death of my husband as this was my personal desire and I am eternally grateful to them both for the time and hardship it may have created in their personal lives. Neither daughter has been paid any compensation. However, I realize the expense and mileage Ona Mae Maydew bore in driving to and from Topeka, Kansas, and I direct that my Co-executors shall first reimburse her for this mileage at the IRS rate in existence at the time."

Paragraph Ninth of the decedent's last will and testament also has some bearing upon our decision herein, and it reads as follows:

"I nominate and appoint my daughters, Doris Lea Merritt and Ona Mae Maydew, as Co-executors of this my Last Will and Testament, without bond. I hereby direct that said Co-executors shall receive no compensation for serving as said Co-executors but that *my daughter Ona Mae Maydew will be reimbursed for her mileage to and from Topeka, Kansas, at the IRS rate in existence at the time.*" (Emphasis added.)

The will was duly admitted to probate, and Ona Mae and Doris Lea were appointed co-executors. Ona Mae then filed a petition for allowance and classification of demand, seeking reimbursement

of $29,334.99 for her mileage in traveling to and from her mother's home from January 8, 1995, until Zeta's death.

Doris Lea opposed the claim, contending that Ona Mae should only be reimbursed for trips made to Lebanon while her mother was still living at home. Doris Lea had no objection to Ona Mae's claim from January 8, 1995, up until January 2, 1997. It was on January 2, 1997, that Zeta was moved into the nursing home in Downs.

Doris Lea argued the will clearly and unambiguously provided reimbursement for Ona Mae only while she helped take care of and stayed with her mother while Zeta resided in her own home near Lebanon. The trial court agreed with Doris Lea and entered an order allowing reimbursement of $12,570.60 to Ona Mae for trips made to Zeta's home while Zeta was still living there.

Ona Mae appeals the magistrate's decision to the district court, which affirmed the magistrate's decision. The trial court found the language of the will to be clear and unambiguous that Ona Mae was to be reimbursed for mileage expenses incurred only in taking care of and staying with Zeta while she resided in her own home. Accordingly, the trial court denied any reimbursement for trips made after Zeta was placed in the nursing home.

We note also that Ona Mae received reimbursement for mileage while acting as co-executor of the will, and Doris Lea did not object to this item of reimbursement.

This appeal is from the findings of the trial court set forth above.

## IS PARAGRAPH EIGHTH OF THE DECEDENT'S WILL CLEAR AND UNAMBIGUOUS?

Perhaps the most important issue that we must determine on appeal is whether the provision of the decedent's will regarding the payment of mileage was clear and unambiguous. If it was, we would affirm the trial court. If it was not, extrinsic evidence can be and should have been admitted, and we would reverse and remand.

The legal effect of a written instrument is a question of law for the court to decide. On appeal, a written instrument may be construed and its legal effect determined by the appellate court regardless of the construction made by the trial court. *In re Estate*

*of Mildrexter,* 25 Kan. App. 2d 834, 836, 971 P.2d 758, *rev. denied* 267 Kan. 888 (1999).

"Where a court is to determine the effect of a will, its first duty is to survey the instrument in its entirety and determine whether its language is so indefinite and uncertain as to require employment of rules and judicial construction. [Citation omitted.] The critical test in determining whether a will is ambiguous is whether the intention of the testator can be gathered from the four corners of the instrument itself. If so, ambiguity does not exist. [Citation omitted.] Whether an instrument is ambiguous is a matter of law to be decided by the appellate court. [Citation omitted.] If the testator's intent can be ascertained, neither rules of construction nor extrinsic evidence should be allowed to vary the clear intent expressed on the face of the instrument. [Citation omitted.]" 25 Kan. App. 2d at 836.

In considering a will, a court cannot begin by inferring a testator's intention and then construe the will to give effect to such intention, however probable it may be, nor can it rewrite the will in whole or in part to conform to such presumed intention. It is the duty of a court to construe, not to construct, a will. *In re Estate of Sanders,* 261 Kan. 176, 182, 929 P.2d 153 (1996).

We conclude that the terms used in paragraph Eighth of the decedent's last will and testament are ambiguous, and we reverse the trial court's decision to the contrary. Paragraph Eighth of the will states that Doris Lea and Ona Mae have equally shared the responsibility of caring for Zeta in her home and "staying with her on a weekly basis." We believe that statement is ambiguous in the context in which it is used and will require extrinsic evidence to determine the intention of the testatrix in the use of that language. The statement could be read as a separate clause which we might interpret to include the weekly nursing home visits if it can be determined that was the intention of the decedent. The facts are clear that Ona Mae's travel from Topeka to Lebanon and back remained substantially the same prior to the placing of her mother in the nursing home and after that time. We believe it is possible to interpret that clause to indicate that Zeta wished to reimburse Ona Mae for weekly travel expenses both to her home and to the nursing home. An illustration of Zeta's intent we believe is shown by paragraph Ninth, which provided for reimbursement of travel expenses after Zeta's death for services as a co-executor.

The will provides for reimbursement to Ona Mae for taking care of the decedent in her home. We believe the statement "taking care of me" is also somewhat ambiguous. We are unable to state with any certainty just exactly what Zeta meant by that statement. The argument made by Ona Mae is that she continued to care for her mother's home and continued to provide a situation wherein her mother could believe she might possibly return home at some time in the future. In addition, Ona Mae took care of Zeta's home after she moved to the nursing home.

The most important issue is ascertaining the intent of the testatrix. We are unable to discern that intent from the four corners of the will and conclude that extrinsic evidence must be heard in an effort to determine what the testatrix intended by paragraph Eighth of her will. The law is clear that in order to ascertain the intent of a testator, all provisions of the will must be construed and read together. One provision must not be given controlling significance by ignoring the other provisions of the will. *In re Estate of Brecklein*, 6 Kan. App. 2d 1001, 1006-07, 637 P.2d 444 (1981).

We hold that the will is ambiguous and that the trial court erred in concluding that it was not.

## EXTRINSIC EVIDENCE

Since we have held that the decedent's will was ambiguous, it follows that extrinsic evidence becomes admissible to assist in defining the testator's intent. *McClary v. Harbaugh*, 231 Kan. 564, 567, 646 P.2d 498 (1982). It follows from our conclusion that the trial court erred in determining the will to be unambiguous that the trial court also erred in refusing to admit extrinsic evidence concerning the intention of the testatrix.

We note that Ona Mae filed an affidavit to show what testimony she anticipated and, in that affidavit, it is stated that her mother often expressed to her that she appreciated the sacrifices Ona Mae was making to attend to her needs while in the nursing home. Zeta, according to Ona Mae, often expressed her gratefulness to Ona Mae for travel time and time away from family.

We reverse the trial court's decision and remand the matter for trial to determine the testatrix's intent and the meaning of the

terms of paragraph Eighth of her will. In making this determination, the trial court must allow the admission of extrinsic evidence in order to ascertain the decedent's intent.

Reversed and remanded.